## Louisville & Nashville Railroad Co. v. Guttman, et al.

(Decided May 8, 1912.)

### Appeal from Lincoln Circuit Court.

1. Railroads—Emission of Sparks from Engine—Negligence—Instructions.—Where, in an action against a railroad company for the destruction of appellee's house and part of the contents by fire, caused by the alleged negligence of appellant in allowing sparks to escape from its locomotive, instructions which told the jury to find for the appellee if they believed from the evidence that the fire resulted from the appellant's negligently equipping its locomotive with an insufficient spark arrester, or from its negligent management or operation of the locomotive, sufficiently submitted to the jury the issues of fact to be determined by them.

2. Railroads—Evidence.—While it was error for the trial court to sustain appellee's objection to a question from appellant's counsel to a witness, which asked him to tell the jury whether or not the spark arresters on its locomotives were the best appliances known to science, in practical use, for the prevention of escape of sparks from locomotives, the error was not prejudicial, as the witness, notwithstanding the exclusion of the question by the court answered it, and the answer was not withdrawn from the consideration of the jury.

3. Judgment—When Should Not Be Reversed.—A judgment should

not be reversed by the Court of Appeals, even for error, unless it appears from the record to have prejudiced some substantial right of the party complaining.

FRED P. CALDWELL, BENJAMIN D. WARFIELD, J. W. ALCORN and K. S. ALCORN for appellant.

J. W. RAWLINGS, ROBT. HARDING and E. PURYEAR for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellees, W. M. Guttman, N. T. Guttman, and Christine Guttman, recovered in this action against the appellant, the Lousiville & Nashville R. R. Co., a verdict and judgment for $450.00 in damages, resulting from the destruction by fire of their residence and some of their household property therein, caused, as alleged, by the negligence of appellant in not having its railroad engine properly equipped and by the negligent handling of same.

Appellant asks a reversal of the judgment on the grounds:

First: That the trial court erred in refusing to give as requested by it, at the conclusion of the appellees' evidence, a peremptory instruction directing the jury to find for it.

Second: That it improperly refused to permit appellant to prove by its witness, Fenwick, that the screens on its locomotives at the time of the fire, were the best appliances known to science in practical use for the prevention of the escape of sparks from locomotives.

Third: That the court erred in permitting appellees to introduce evidence as to previous fires which occurred at the same place from appellant's engines.

Fourth: That the court improperly instructed the jury.

Appellees' house was about two miles from Crab Orchard and situated on a considerable hill at a distance of one hundred and ninety-five feet from appellant's railroad, and on the south side thereof. In approaching and passing appellees' house, going southwardly from Crab Orchard, appellant's trains encounter a steep grade which does not end until the track reaches a point several hundred yards beyond appellees' house. The witnesses of both appellant and appellees agree that on the day and at the time of the fire there was an unusually

high wind blowing from the railroad toward the house, and that the ground and atmosphere were quite dry. The fire occurred about 11 A. M. Several witnesses who claimed to have seen one of appellant's freight trains passing appellees' residence, testified that its engine seemed to be laboring hard in ascending the grade and that it threw out a great many sparks, which were blown by the wind in the direction of and beyond appellees' house. Other witnesses testified that, on the day of the fire and following the burning of the house, they found on the ground around the site of the house and between it and the railroad, many cinders, such as are emitted by locomotives, varying in size from a grain of wheat to an inch in thickness, which seemed to have been freshly thrown there. The fire was first discovered by Mrs. Mobley, a neighbor of appellees, who testified that it was in the comb of the roof and at the end of the building looking toward the railroad. The appellee, Mrs. Christine Guttman, was in the house and upon being informed by Mrs. Mobley of the fire she came out in the yard and saw the fire was at the point in the roof designated by Mrs. Mobley. Mrs. Guttman also testified that she saw the freight train as it passed her house between 10 and 11 A. M., and that it was emitting a great volume of sparks and cinders; also that she heard the cinders falling on the roof of her house, just before the fire was discovered; and both she and Mrs. Mobley stated that the discovery of the fire was made about twenty minutes after the freight train passed out of sight. According to the further testimony of Mrs. Guttman there was then no fire in the house, but there had been a fire in the cooking stove between four and five o'clock that morning for getting breakfast for the family, which had not been replenished after breakfast and had, in fact, died out.

The fact that the kitchen flue or chimney was about three feet from the end of the house next to the railroad, and that the fire started in that end of the roof and three feet from the chimney, makes it apparent that it was not caused by sparks from the chimney for the high wind then prevailing would not have allowed sparks from it to go toward the end of the house next to the railroad, but in the opposite direction. The fire rapidly spread from the end of the house toward the chimney and beyond, until the entire roof was enveloped in the flames, and, as the two women had no means of reaching and extin-

guishing the fire when discovered by them, it gained
such headway by the time men from the neighborhood
reached the scene that nothing could be done to save the
building from destruction; indeed, so quickly was the
building consumed that those present were able to get
out but a few of the household effects of the family.

Quite a number of witnesses introduced in appellant's
behalf testified that notwithstanding the high wind
sparks or cinders from the locomotives could not have
been blown a distance of 195 feet so as to communicate
fire to appellees' house. Some of these witnesses,
notably a section boss and his hands, and appellant's
station agent and assistant at Crab Orchard, testified
that no freight train passed appellees' house between 10
and 11 o'clock A. M. the day of the fire, but that one did
pass there at 8:40 A. M. and another at 9:14 A. M., and
a passenger train at 11:34 A. M., but these trains, ac-
cording to the further testimony of the section boss and
his hands, threw off no sparks or cinders of consequence
in passing.

It will be seen from what we have said of the evidence
that the giving of a peremptory instruction as asked by
the appellant would not have been proper; the evidence
was conflicting as to the origin of the fire, but much of
that furnished by appellees' witnesses strongly tended
to prove that the burning of the house was caused by
sparks or cinders from the engine of appellant's freight
train and, notwithstanding the contrary evidence of ap-
pellant's witnesses, the jury had the right to accept the
testimony of appellees' witnesses in preference to that
of appellant's. In the case of Cin., N. O. & T. P. Ry. Co.
v. Cecil, 28 R. 830, the facts were very similar to those
in the case at bar though not so strongly conducing to
prove that the burning of the car, destroyed in that case,
was caused by sparks from the railroad company's en-
gine. In the opinion it is said:

"No one saw the sparks fall on or in or around the
car in question, and it must be admitted that the evi-
dence, that the fire was caused by sparks from the en-
gines of appellant's trains, is exceedingly meager; but
we have reached the conclusion, in the light of the cases
heretofore decided, that this was a question for the de-
termination of the jury. In the case of Louisville and
Nashville R. R. Co., v. Samuel's Ex'or., 22 Ky. L. R.,
303, after stating the rule as to the non-liability of rail-
roads for fire resulting from escaping sparks if the en-

gines were furnished with approved spark arresters it is said:

"But it is equally well settled, that in an action against a railroad company to recover for loss by fire alleged to have resulted from negligence in operation, or for failure to have the spark arrester in proper condition, testimony showing that sparks and cinders escaped from the locomotive in unusual quantities was competent, and will, of itself, warrant the presumption that the arrester was out of order, or was improperly adjusted, and that the defendant was consequently guilty of negligence in this regard.' (Louisville & Nashville R. R. Co. v. Taylor, 92 Ky., 52; Kentucky Central R. R. Co. v. Barrow, 89 Ky., 643.) And this same principle was enunciated and upheld in Mills v. Louisville & Nashville R. R. Co., 25 Ky. L. R. 488."

It appears from the evidence commented on in the opinion, supra, that the nearest point that the engine came to the car that was burned was 154 feet and that the night was calm with some snow on the ground. In view of these facts it was argued in that case by counsel for the railroad company that it was a physical impossibility for the sparks from the engine to have ignited the car, but in response to this contention the court said:

"It seems to us, however, this was a question properly for the jury. It is true, the evidence conduced to show that the engines were fitted with lawful spark arresters but this may not have been credited by the jury who were, after all, the arbiters of the facts; and taking the testimony on this branch of the case as a whole, we are not able to say there was no evidence from which the jury would be warranted in concluding that the fire was caused by the sparks from the engines hauling appellant's freight train; and if these sparks were as big as the end of a man's thumb, as testified by Lawrence Rogers, this would show the spark arresters were not in good condition."

The facts of the instant case make a much stronger showing for the appellees; for the dry condition of the ground and the board roof of the house, together with the unusually high wind blowing from the railroad in the direction of the house, furnished reasonable grounds for their contention that the house was ignited by sparks from the passing locomotive and appellant's evidence seems to offer no other solution of the cause of the fire that appears plausible. In making this statement we

have not over-looked appellant's contention that the house was ignited from the chimney, but the only evidence offered in support of this contention is found in the statements of two or three witnesses who said that when the cooking stove was removed from the room over which the fire started it was hot to the touch and perhaps contained some fire; also that there was upon the stove a skillet of lettuce and onions that seemed to have been freshly cooked, but these facts evidently had no weight with the jury in veiw of the uncontradicted testimony of Mrs. Guttman, Mrs. Mobley and one other witness, that the fire started in the end of the roof next to the railroad track and three feet from the chimney, and that the great force of the wind blowing from the railroad in the direction of the house, while sufficient to carry to the roof of the house the sparks and cinders which appellees' witnesses testified were thrown in unusual quantities from the passing locomotive, at the same time prevented the sparks from the chimney of the house from flying toward the place on the roof where the fire started.

Counsel for appellant in argument greatly rely upon the testimony of Ivan Fish and R. H. Collier. Fish was appellant's station agent at Crab Orchard, at the time of the fire, and Collier was a student of telegraphy in his office. It was the duty of Fish to register upon a record kept for that purpose, all trains that passed Crab Orchard and the time of their doing so. The work of registering the trains, however, he often entrusted to Collier. Fish testified that on the day of the fire a freight train going south left Crab Orchard at 8:05 A. M.; that another, known as an extra, passed Crab Orchard at 9:14, going north; that the next train that passed Crab Orchard station was the morning passenger train which arrived at Crab Orchard at 11:32 A. M., and departed at 11:34 A. M., going south, and that these were the only trains shown by the record in his office to have passed Crab Orchard in the forenoon of the day upon which the fire occurred. Fish further testified that Collier made the entry regarding the passing of the 9:14 train.

The testimony of Collier was, in the main, corroborative of that of Fish; he admitted, however, on cross-examination, that though frequently entrusted with the duty of recording the passing of trains he sometimes failed to make the necessary entries. The force of this

testimony, as well as that of the section boss and his hands, that no freight train passed appellees' house on the morning of the fire going south, except the one that left Crab Orchard at 8:05 A. M., must be conceded; but on the other hand, Mrs. Guttman, Mrs. Mobley and other witnesses, introduced in behalf of the appellees, were equally positive in testifying that a freight train from which it is claimed the house was ignited, passed going south betwen 10 A. M. and 11 A. M., twenty minutes before the discovery of the fire; also that the engine of this train was emitting a great volume of smoke and sparks or cinders which the high wind was blowing in the direction of appellees' house. It is manifest that the evidence on this issue of fact was very conflicting, but the issue was properly submitted to the decision of the jury under the instructions of the court, and it is not our province to declare what witnesses or number of witnesses should have been believed by the jury or in whose favor as a whole the evidence preponderated.

As stated in the opinion in Louisville & Nashville R. R. Co. v. Eckman, 137 Ky., 331:

"Our duty goes no further than to determine whether there was evidence to support a verdict and our decision on that point is not to be controlled by our opinion as to whether the verdict is in accordance with or against the weight of the evidence."

It is insisted for appellant that instruction No. 1 is fatally defective and prejudicial to it; in that it, in substance, told the jury that it was appellant's duty to furnish its engines with the best screens or spark arresters known to science in practical use for preventing the escape of sparks, and if it failed to do so and appellees' house was ignited from sparks escaping from its engines they should find for the appellees; it being claimed that if appellees were entitled to recover at all it was for the burning of their house by sparks thrown from the one engine of the freight train which they claim passed it twenty minutes before the discovery of the fire.

The first part of the instruction properly advised the jury of the general duty which the law imposed upon appellant with reference to the character of spark arresters to be used upon its engines. While the remainder of the instruction contains the word "engines" when the word engine should have been used instead, such inadvertent use of the plural did not vitiate the instruction, as considered in all its parts, it in effect told the jury, and

they must have understood its meaning to be, that if they believed from the evidence that the appellant failed to furnish upon its engine (i. e. the freight engine) such a screen or spark arrester as indicated, and by reason thereof the appellees' house and other property were ignited from the sparks escaping therefrom and same destroyed, they should in that event find for the appellees. Another clause of the instruction simply defined the measure of damages.

Instruction No. 2 told the jury that if they believed from the evidence appellant's engine was properly equipped with such screen or spark arrester; yet, if they believed from the evidence, appellant was otherwise negligent in the management and operation of its engine and train, and because thereof, appellees' property was ignited and destroyed, they should find for appellees. As it is alleged in the petition that the burning of appellees' house was caused by the negligence of appellant in not having its engine properly equipped and by the negligent handling of same, the second instruction was properly given to cover the second specification of negligence charged.

By a third instruction the jury were further told that unless they believed from the evidence that the fire was caused by sparks from appellant's engine, they should find for the appellant. Instructions one and two are substantial, if not literal, copies of two approved by this court in the case of Southern Ry. in Ky. v. McGeoughey, 31 R., 291, in which a recovery was sustained for the burning of a barn 260 feet from the railroad by sparks thrown from one of the railroad company's engines. As a whole we think the instructions fairly stated the law of the case.

The complaint of the appellant of the refusal of the trial court to permit the witness Fenwick to state that the screens in use on its engines, at the time of the fire, were the best appliances known to science in practical use for the prevention of the escape of sparks from locomotives, seems to us to be without merit. We find from the bill of exceptions that after Fenwick had testified fully as to the character of spark arresters used on appellant's engines, their mechanism, etc., he was asked this question by counsel for appellant:

"Tell the jury whether or not those are the best ap-

pliances known to general use for the purpose of pre-
venting the escape of sparks.'' To this question he
answered:

"Why, it is the best I know of.''

It appears from the bill of exceptions that the ques-
tion was objected to by counsel for appellee and that the
objection was sustained, but that following the objec-
tion, and before it was sustained by the court, the above
answer was given by the witness. It does not appear
from the bill of exceptions that the answer was excluded
by the court from the consideration of the jury or that
the question was repeated by counsel for appellant. In
view of the above answer of Fenwick, and the fullness
in other respects of his testimony as to the mechanism
of the spark arresters and the purpose and manner of
their use, we are unable to see that any injury resulted
to appellant from the inability of its counsel to procure
a more elaborate answer from him to the question ex-
cluded by the court.

The alleged incompetent evidence, of the introduc-
tion of which appellant complains, consists of the testi-
mony of two or three witnesses as to other fires
caused by sparks from appellant's engines occurring on
appellees' premises previous to the burning of their
house. One of the witnesses testified to a fire which oc-
curred at the same place about three months before the
burning of the house. If this had been the only testi-
mony as to the occurrence of other fires we would be in-
clined to hold that it was too far removed from the burn-
ing of the house to be competent but there was also proof
of another fire within two months or less of the date of
the fire which consumed the house, and also another
shortly thereafter; in view of which and the fact that
they were caused by sparks from appellant's engines, we
think the evidence with reference to all these fires was
competent.

In Louisville & Nashville R. R. Co. v. Samuel's Exr.,
22 R., 304, it was held that it was competent to admit evi-
dence that about the time the fire complained of occurred
sparks and burning coal were frequently dropped by
other engines passing on the same road and upon
previous occasions. In the case of I. C. R. Co. v. Hicklin,
131 Ky., 624, it is in the opinion said:

"The incompetent evidence complained of was to the
effect that other trains of the appellant at other times
than on the night of the fire, had permitted live sparks

and cinders to escape from their locomotives and had set fire to logs and grass along the right of way. The admissibility of such evidence is no longer an open question. In a long line of decisions this court has held in favor of its admissibility.''

In Stowe v. Louisville & Nashville R. R. Co., 140 Ky., 291, a case relied upon by counsel for appellant, it is said:

''It is earnestly insisted however that the court erred in refusing to permit appellant to introduce evidence of other fires occurring in the vicinity before and after the fires which damaged his crops. One of the fires which it was sought to bring to the attention of the jury, occurred more than three months before, and the other fire more than three months after, the fire complained of. Neither appellant nor any of his witnesses was able to testify to any other fires occurring just before or after the fires in question. We conclude that each of these fires was too remote in point of time to be of any assistance to the jury in determining the issue presented. Had it been shown, that between the time of these remote fires and the fire complained of, there were other fires, thus raising a strong presumption of continued negligence upon the part of the railroad company, the evidence of the two fires referred to might have been properly admitted.'' (I. C. R. R. Co. v. Scheible, 24 R. 1708; C. N. O. & T. P. Ry. Co v Caskey, 24 R., 2392; Louisville & Nashville R. R. Co. v. Taylor, 92 Ky., 57.)

Our reading of the record in this case has enabled us to find no sufficient ground for disturbing the verdict of the jury, and sections 134, 338 and 756 of the Civil Code provide, that a reversal shall not be granted, even for error, unless it appears from the record to have prejudiced some substantial right of the party complaining.

Wherefore the judgment is affirmed.