## Central City Foundry & Machine Company v. Illinois Central Railroad Company.

(Decided January 13, 1914.)

### Appeal from Muhlenberg Circuit Court.

Railroads—Operation—Fires—Negligence.—To constitute negligent operation of a locomotive with respect to the emission of sparks, as distinguished from negligent failure to maintain the spark-arresting apparatus in effective condition, there must be an emission of sparks in unusual quantities.

FLEXNER & GORDON and T. J. SPARKS for appellant.

TAYLOR & EAVES, TRABUE, DOOLAN & COX, BROWDER & BROWDER, BLEWETT LEE and R. V. FLETCHER for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

Appellant operated a foundry plant in Central City, adjoining appellee's tracks. On February 3, 1912, this plant was destroyed by fire. Appellant thereupon sued appellee in the Muhlenberg Circuit Court for negligently causing the burning thereof. Upon the trial, the jury found for the railroad. From the judgment thereupon entered, this appeal is prosecuted. A reversal is urged.

upon one ground only—failure of the court to instruct the jury properly.

The plaintiff charged in its petition (1) negligence in the operation and management of defendant's locomotives; and (2) negligence in failure to equip its locomotives with spark arresters and to keep same properly adjusted and in proper condition. The court instructed the jury upon the negligence charged with respect to defective appliances; but refused to instruct on negligence in the operation of defendant's locomotives. Of this refusal, appellant complains. The only question is the sufficiency of the evidence to authorize an instruction on negligent operation of said locomotives.

The building which burned was constructed with roof and sides of corrugated iron, the only outside exposure of wood being at the eaves. There was no one in the building at the time it was discovered to be on fire, and there is no direct evidence showing the origin of the fire. When first discovered, the fire was bursting out in the eaves of the gable of the building. There was some proof that it was snowing at the time of the fire, and that there was some snow on the roof of the buildings. While it is evident that the jury found for defendant upon the theory that the building was set on fire by other agencies than appellee's locomotives, still if appellant was entitled to the instruction asked, it should have been given.

The evidence relied upon by appellant as authorizing such instruction, is as follows. Albert Logsdon, a witness who was standing in front of McIntosh's saloon, testified:

Q. While you were outside, could you see from where you were toward the foundry and machine company's building? A. Yes, sir. Q. Did you see any train pass along there when you were outside of the saloon, engine of any kind? A. I didn't pay much attention; but I saw a switch engine—I thought it was a switch engine. Q. Do you know which way it was going? A. No, sir; but it was passing up and down. Q. What kind of night was it—or evening? A. Pretty bad. Q. Any wind blowing? A. Yes, sir. Q. Which way was the wind blowing relative to the railroad track and the buildings? A. Blowing towards the building. Q. Did you see any sparks coming out of that engine when you passed the engine? A. I didn't notice any.

Q.  Where did you notice any sparks coming out?  A. Up by the saloon.  Q.  Did that engine pass that building?  A.  Yes, sir.  Q.  What about the size of them (the sparks)?  A.  I didn't notice how big they was. Looked like about that size; about the size of the end of your finger.  Q.  Was that engine puffing?  A.  Yes, sir.  Q.  About how long after that that you heard the fire alarm?  A.  About 15 to 20 minutes, I suppose.  Q. In what quantities were they (the sparks) coming out? A.  Right smart of them."

It was shown that H. T. French, a locomotive engineer in the employment of appellee, passed the foundry plant with his locomotive, about ten minutes before the fire.  It was also shown that the tracks along in front of the foundry plant and for quite a distance in either direction are practically level; that the locomotive operated by French, and one operated by E. P. Maloy, another engineer in the employment of appellee, were the only ones that passed the foundry plant about the time of the fire; that these locomotives were running "light," one of them having no cars attached, and the other only four cars.

Maloy testified, in part, as follows:

"Q.  Say whether or not the way in which you work your engine has anything to do with the escape of sparks from the smoke stack?"

"A.  When you work your engine heavy, it is more likely to cause sparks than any other time."

Appellant does not contend that there is any direct evidence authorizing an instruction as to negligent operation of appellee's locomotives, but argues; (1) that the witness, Logsdon, saw sparks coming from the locomotive; (2) that the locomotive was running "light" and on a level track; (3) that a locomotive running "light" and on a level track should not emit sparks, and, (4) therefore, the fact that the locomotive *did* emit sparks proves that it was negligently operated. And, that for this reason, the appellant was entitled to an instruction on negligent operation thereof.

To constitute negligent operation or management of a locomotive with respect to the emission of sparks, as distinguished from negligent failure to maintain the spark-arresting device in good condition, there must be an emission of sparks in *unusual* quantities.  The law does not presume continued negligence upon the part

of railroads in the operation and management of its locomotives; and to hold that it is proof of negligent operation for a locomotive running light upon a level track, to emit sparks in anything less than unusual quantities, would be to hold that *all* locomotives running at that place are negligently operated. Proof of the emission of a large quantity of sparks by such a locomotive, or of the emission of sparks of large size, would be persuasive to rebut proof by the railroad company that its spark-arresting apparatus was maintained in effective condition; but it requires proof of the emission of sparks in unusual quantities to constitute evidence of negligent operation of locomotives with respect to such emission of sparks, under circumstances of this kind.

It follows, therefore, that there was no evidence authorizing an instruction on negligent operation; and the lower court properly overruled the motion therefor.

The judgment is affirmed.