## Fowler v. Commonwealth.

(Decided March 5, 1914.)

### Appeal from Jackson Circuit Court.

1. Homicide—Malice.—Malice aforethought means a predetermination to do the act of killing, without legal excuse, and it is immaterial how recently such determination was formed, before the act of killing.

2. Homicide — Evidence—Weight and sufficiency—Malice.—Malice may be proved by inferring it from the circumstances attending the killing.

G. F. RADER, W. E. BEGLEY and C. B. LITTLE for appellant.

JAMES GARNETT, Attorney General, D. O. Myatt, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HANNAH.—Affirming.

Appellant, Ruford Fowler, together with his brother, Ernest Fowler, and their father, Carter Fowler, were jointly indicted in the Jackson Circuit Court for the murder of John M. Moore. The defendants moved for separate trials; and the Commonwealth having elected to try the appellant, Ruford Fowler, first, the jury found him guilty of murder, and fixed his punishment at confinement in the penitentiary for life; and he appeals.

The killing for which he was tried and convicted occurred on August 5, 1913, at the polling place in Cavanaugh Precinct, in Jackson County, just prior to the announcing of the vote cast in the primary election in that precinct.

The one ground urged for reversal is that the verdict is palpably against the evidence, that no malice was shown, and no evidence was introduced from which malice could be inferred, and that if a conviction was proper at all, the verdict should have been for voluntary manslaughter.

The deceased and the accused had lived in the same neighborhood for a number of years; and while there had never been any personal altercation between them, it was shown by the Commonwealth that there had been some differences between deceased and appellant's father and brother, Ernest.

Appellant's brother, Ernest, some two or three years before this killing, had a dog killed, and he accused the deceased of committing that offense, and made threats against deceased on several occasions.

Deceased had been a justice of the peace, and while so acting, had presided at the trial of appellant, his father and brother, upon misdemeanor charges, in which convictions were had; and had also presided at the trial of a civil action in which appellant's father was the unsuccessful party; and the father had accused deceased of improper conduct in that trial.

Moore and the Fowlers took considerable interest in the primary election. They had been on the election grounds all or nearly all that day. Sometime during the day, Ruford Fowler had either discharged his revolver into the ground, or let it go off in his pocket. He says he was "monkeying" with it and it went off in his pocket. A short time before the killing, the three Fowlers and one Gop Isaacs went to an old house belonging to Ernest Fowler near the polling place, and there drank some of Ernest's whiskey together. They then returned to the polling place, Ruford and his father riding one mule and Ernest and Gop Isaacs the other. When they reached the election grounds, Ruford and Ernest Fowler dismounted and left their father and Isaacs down under the bank to hitch the mules. Immediately above where Ruford and Ernest dismounted, James Moore, a brother of deceased, was singing a song, and John M. Moore, the deceased, with Ed. Richardson and others were standing near. Ernest Fowler came up the bank first, with a rock in each hand and a bucket swinging on his arm. As he came up the bank, he asked, "Who is that singing —John Moore singing?" and some one replied "No, Jim Moore."

Richardson says that as Ernest Fowler passed him, Fowler rubbed his, Richardson's, hand with a rock, and that he at once exclaimed, "Ernest, what are you going to do with those rocks?" and that Ernest replied that he had no rocks. Richardson then said, "You rubbed my hand with one;" and Ernest then cursed him and struck him in the head with a rock. Richardson then struck at Ernest with his fist.

At this juncture, deceased took Ernest Fowler by the arm and turned him partly around, and immediately deceased was struck and knocked down, and while down, was shot in the head by appellant, Ruford Fowler. He died at eight o'clock the next morning, without regaining consciousness.

It was too dark for the witnesses to distinguish the parties to the transaction and just how it all occurred; but it is the contention of the Commonwealth that deceased was trying to separate Ernest Fowler and Richardson, and was not attempting to injure Ernest; that some one struck deceased and knocked him down, and that Ruford Fowler shot him while he was down; and the evidence bears out this contention.

A green sycamore stick or club was found on the ground where the trouble occurred, on the morning after the killing; and there is evidence showing that appellant's father was seen with this stick on the day of the killing. There was also found a rock there that Richardson claims he was struck with. As soon as the shooting was done, Ernest Fowler ran over the bank, toward where the mules were hitched, and Ruford ran around the house. Some of the witnesses say another man ran over the bank just in front of Ernest; and it is the contention of the Commonwealth that this was the father, and that it was the father, Carter Fowler, who struck deceased with the club and knocked him down just before he was shot. However, from a reading of the record, the evidence is not very convincing on this point, though it is evident from the record that deceased was struck with something and knocked partly down, and was shot while down.

Appellant, his father and brother, Ernest, all testified that they entertained no ill-feeling toward deceased; that they were all friendly with each other; that deceased and the father had gone out together the day before electioneering, both being for one of the candidates to be voted for at said election.

Appellant claims that deceased was stooping down to get a rock to strike his brother Ernest, and that he shot to save his brother from death or great bodily harm at the hands of deceased. Ernest Fowler testified that he had no rocks; that as he went up the bank, a deck of cards fell out of his pocket, that he stooped down and picked them up, and that when Richardson asked him what he was doing with the rocks in his hands, he changed the deck of cards from his right to his left hand, saying he had no rocks; that thereupon Richardson called him a liar, and then they went to striking each other; that deceased grabbed him by the arm and struck him and knocked him back; and that as deceased reached down as though he was trying to get a rock, the shot was fired; that he did not know who fired it, and that he then jumped over the bank and ran to where his father was, and said that some one was shooting at him.

One of appellant's witnesses swore that he saw appellant's father, Carter Fowler, immediately before the difficulty commenced, just over the bank, hitching his mule, some four or five steps from the place where the difficulty occurred, and that Carter could have looked up

and seen the parties while engaged in the difficulty; that he did not see Carter Fowler when the pistol fired; that there was somebody standing between him and the place where he had seen said Carter Fowler just over the bank, but he did not know who this was.

Appellant and Ernest Fowler are contradicted by a number of witnesses as to the details of the killing, and are corroborated by no other witnesses as to the material facts.

The Commonwealth introduced a number of witnesses in rebuttal, who testified that the reputation of both appellant and Ernest Fowler for morals was bad; and appellant offered no evidence in contradiction thereof.

Counsel for appellant does not seriously contend that appellant should have been acquitted, but that there was not sufficient evidence to authorize a verdict for murder.

The prosecution is not required to show any facts previous to the killing, as evidence of malice. It is sufficient if malice existed at the time of the killing; and the manner of the killing and the circumstances attending it, may and should be taken into consideration by the jury in determining whether malice existed at the time of the killing.

The court in the instructions aptly defined the phrase "with malice aforethought" as meaning a pre-determination to do the act of killing without legal excuse, it being immaterial how suddenly or recently before the killing, such determination was formed. It is presumed that the jury understood the instructions, and in determining the existence of malice at the time of the killing, they doubtless considered all the circumstances connected with the killing as shown by the evidence, and in doing this, they were authorized to conclude that the killing was pre-determined, although the determination may have been very recently formed; and that it was without legal excuse.

Convinced that the defendant has had a fair trial and that the verdict is authorized by the evidence, the judgment is affirmed.