## Louisville & Nashville Railroad Company v. Rains.

(Decided June 18, 1929.)

ASHBY M. WARREN, BENJAMIN D. WARFIELD, and TYE, SILER, GILLIS & SILER for appellant.

R. L. POPE and R. C. BROWNING for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY— Affirming.

With conflicting evidence and opposing probabilities before it, a jury returned a verdict for $1,000 in favor of appellee, G. W. Rains, against the appellant, Louisville & Nashville Railroad Company, for the destruction of his barn and contents by fire, charged to have been ignited by a passing locomotive, about 8 o'clock on the morning of March 3, 1927. The principal ground relied on for a reversal of the judgment is that under the law and the facts the company was entitled to a peremptory instruction.

Appellee's barn was situated about 150 feet from the railroad on its Pine Mountain branch. Its gable end, with an exposed opening about 3 by 4 feet, was toward the railroad. There was a lot of loose, dry hay in the loft. A passenger train passed going rapidly up grade, with considerable puffing and very heavy exhaust. There was an extraordinary volume of black smoke coming from the locomotive, which a brisk wind carried directly toward the barn. According to one witness, it "was just rolling over towards the barn as high as the top of his barn or the top of a tree." Some of the witnesses testified that the smoke was so dense and was whipped around by the wind so as to conceal the train at

times. While the train consisted of only 2 or 3 cars, there was testimony that, when the rails are frosted as on this morning, and with an ascending grade, there is more puffing and a heavier exhaust than usual. From 5 to 10 minutes after this train passed, fire was discovered in the hay and top of the barn. Frank Lewallen and Earl Rains, a son of appellee, had been hauling manure out of the barn and the barn lot that morning. It was cold and frosty, and a light snow was on the ground. Earl had gone to the house to warm, but Lewallen remained at work in the barnyard. He and several other witnesses testified to the foregoing facts. It was denied by these two and another son of appellee, who had been at the barn, that any of them were smoking or that there was any fire about the barn before the train passed. In January or February before the fire, just after this morning train had passed, cinders as large as a small bird egg or the end of one's little finger were observed in the snow close around the barn and elsewhere. It was shown that 2 or 3 weeks after Rains' barn was burned a neighbor's grass patch, 160 feet from the railroad, caught on fire from this same engine. The foregoing is the substance of the evidence introduced in behalf of the plaintiff.

For the railroad company, it was shown by the engineer and other employees that the engine drawing this morning train was capable of pulling 60 loaded cars, and on this morning there were only 2 light coaches in the train; that it was drifting along down grade, using but little, if any, steam; that there was no heavy exhaust nor any unusual cinders or sparks emitted; that the wind was blowing from the direction of the barn toward the train; and that the locomotive, No. 1363, had been in use on this run only 3 days before the fire. Engines of the same class had been used there for some time. It is not shown, however, that before this 3 days this particular engine had not been used on this line on other occasions. It is indicated that it had been sent to the shops for a washing out and returned to the service. The fireman testified that the engine was not throwing out any cinders, but he stated that it occasionally did so. After the employees heard of this fire, the engine was sent that same night to the shops at Knoxville for inspection. The inspector testified that he examined it promptly and found that the engine was equipped with the most effectual netting which could be used and the latest im-

proved spark arrester and apparatus; and that the screens and equipment were in perfect condition. He expressed the opinion that sparks, coals of fire, or cinders could not get through the smokestack without passing through the netting. This is the evidence for the defendant.

It is emphasized by the appellant that there was an absence of evidence that any sparks, fire, or cinders were emitted by the train passing just before the barn was discovered to be afire. It is contended that the plaintiff must show such facts, and that such firebrands must have been emitted in *unusual* quantities; that, in the absence of such proof, negligence will not be presumed, and the railroad company is entitled to a peremptory instruction. The cases of Cincinnati, N. O. & T. P. R. Co. v. Sadieville Milling Co., 137 Ky. 568, 126 S. W. 118, and Central City Foundry & Machine Co. v. Illinois Cent. R. Co., 156 Ky. 759, 162 S. W. 81, are principally relied on as authority sustaining that position.

The evidence in the Sadieville Milling Co. case only disclosed that the fire was discovered at 4 o'clock in the morning; that several trains had passed during the night, the latest one going by at 3 o'clock; and that both before and after the fire engines had been seen to emit sparks. It was pointed out that the courts had never held that evidence of this character was sufficient to establish a prima facie case against a railroad company, "in the absence of direct testimony, or some circumstances tending to show, that the trains which passed before the fire, and whose passing would reasonably account for the fire, emitted sparks of fire or were otherwise negligently managed." In the case at bar, we have direct testimony of circumstances which would reasonably account for the fire having been caused from the locomotive, and that case is thus distinguished.

In the Central City Foundry & Machine Co. case the evidence showed that on a windy night a switch engine was passing to and fro, and a witness saw sparks being emitted from it at a point other than near the house destroyed 15 or 20 minutes before the fire. The jury found for the railroad company, and, on appeal, it was contended that the court erred in not giving an instruction on the negligent operation of the locomotive. The opinion discusses the character of evidence necessary to authorize an instruction on that phase of liability, and held that the evidence was not sufficient in that case: We have

in this case two grounds of negligence relied on: (1) Failure to equip the engine with proper spark arresters; and (2) negligence in the operation of the locomotive. In the Foundry & Machine Co. case the difference in the quantum of proof respecting these two grounds is thus stated:

"Proof of the emission of a large quantity of sparks by such a locomotive, or of the emission of sparks of large size, would be persuasive to rebut proof by the railroad company that its spark-arresting apparatus was maintained in effective condition; but it requires proof of the emission in *unusual* quantities to constitute evidence of negligent operation of locomotives with respect to such emission of sparks, under circumstances of this kind."

It is not necessary, therefore, to sustain the allegation of loss by reason of failure to equip a locomotive with proper spark arresters, that there should be only evidence of the emission of firebrands in unusual quantities.

Nor does Louisville & N. R. Co. v. Deaton, 219 Ky. 715, 294 S. W. 149, sustain appellant's argument. A verdict was sustained, based solely on circumstantial evidence indicating that the fire originated from sparks from a locomotive. It is true we said there that, when the plaintiff had thus established the origin of the fire it then devolved on the railroad company to show that the engine was equipped as required by the statute (section 782). From this latter statement, it is argued that, if such compliance with the statute had been shown, no recovery would have been permitted. That is a misconception of the opinion. Had the railroad company introduced evidence to the effect suggested, the case would then have been controlled by the rules laid down in many cases where such evidence had been heard. A compliance with the statute does not conclusively relieve the railroad company of liability. Testimony in its behalf that the engine is properly equipped is but evidence tending to relieve it from liability arising from and through a violation of the statute. It rebuts the evidence of the plaintiff tending to show that there has been a failure to comply with the statutory provision. Though, as usual, there was no direct contradictory evidence that the spark-arresting apparatus was all that it should have been, evidence that large cinders had been emitted from this

engine within 2 or 3 weeks after the fire, and that it or similar engines had set fire to grass and fences within a reasonable time before this fire, as well as the circumstances under which the barn was ignited, presented an issue of fact for the jury. Louisville & N. R. R. Co. v. Brewer, 170 Ky. 505, 186 S. W. 166; Pennsylvania R. Co. v. P. Bannon Pipe Co., 213 Ky. 257, 280 S. W. 951.

Without differentiating other cases relied on by appellant, and foregoing a discussion of the authorities supporting appellee's right to recover, we may say that the evidence was sufficient to justify a submission of the case to the jury and to sustain the verdict. Of particular application is Louisville & N. R. Co. v. Feeney, 166 Ky. 699, 179 S. W. 826. See, also, Chesapeake & O. R. Co. v. Meek, 169 Ky. 775, 185 S. W. 160; Louisville & N. R. Co. v. Hobbs, 188 Ky. 291, 221 S. W. 539; Akers v. Illinois Cent. R. Co., 207 Ky. 379, 269 S. W. 311.

Another ground submitted for reversal of the judgment is that incompetent evidence was admitted consisting of the testimony of the appellee that on previous occasions trains had ignited fires which burned his fences 2 or 3 years before; it being contended that the period should have been limited to a time not exceeding 3 months before the barn burned, as held in Stowe v. Louisville & N. R. Co., 140 Ky. 291, 131 S. W. 4. This testimony was elicited under these circumstances: Counsel for the railroad company, on cross-examination, had sought to prove by the appellee that, although trains had been passing this barn for 20 years or more, it had not caught on fire. When the witness was taken for redirect examination, his counsel asked him about other fires on his place apparently caused by sparks from locomotives, and, under a recross-examination, it was disclosed that there had been no such fire within a period of 2 or 3 years. While adhering to the rule that evidence as to fires suffered at a remote time is not competent, under the circumstances under which this was introduced we do not consider it prejudicial error.

The appellant offered an instruction submitting its defense of having properly equipped its locomotive and operated its train in a careful manner. The court refused to give the offered instruction, but, in the instructions given, that defense was properly submitted to the jury in substantially the same language. Consequently, no error was committed in this respect.

The judgment is affirmed.