# Louisville & N. R. Co. v. Sloan.

Oct. 7, 1941.

J. J. Tye, H. L. Bryant, J. Miller White and H. T. Lively for appellant.

O. W. Black and R. L. Pope for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Reversing.

Hot cinders from a passing locomotive belonging to appellant struck appellee in the eye as she was standing at an under pass in the city of Corbin, Kentucky.

The petition alleged that the injuries were the proximate result of the negligence of the railroad (1) in

its failure to have proper, suitable, or fit spark arresters on the engine, and smokestack as required by Section 782, Kentucky Statutes, and (2) in improperly operating its train. Appellant's plea of contributory negligence was not denied. As grounds for reversal, appellant relies solely on the contention that the trial court was in error in overruling the motions for a peremptory instruction made at the close of plaintiff's evidence and at the close of all the evidence.

Appellee offered no direct testimony as to the condition of the spark arrester with which the engine was equipped and no circumstance is shown in the evidence from which any inference can be drawn that it was not in good condition. On the contrary, the evidence for appellant shows the arrester to have been in perfect condition and of such construction as to meet statutory requirements.

The intention of the Legislature in enacting Section 782 of the Statutes was to prevent large cinders from escaping from smokestacks of engines as a protection to adjacent property from hazard of fire. It is manifest from the language of the statute that its enactment was not intended to protect persons from sustaining injuries caused by cinders small enough to enter the human eye. In fact, the proper functioning of an arrester increases the danger of such injuries as were received by appellee, because its function is to break large cinders, which can be seen and avoided, into particles small enough to enter the eye before they can be seen. Cincinnati, N. O. & T. P. R. Co. v. Baxter, 110 S. W. 248, 33 Ky. Law Rep. 305, 18 L. R. A., N. S., 241. For that reason we fail to see how injuries such as appellee sustained could have been the proximate result of negligent installation or maintenance of the spark arrester, even if appellee had proven it not to be proper, suitable, or fit, as alleged in the petition. We therefore conclude that appellee was not entitled to have her case submitted to the jury upon this contention.

We now turn our attention to the second theory upon which appellee relies in her contention that the case should have been submitted to the jury. The operation of railroads is necessary to the economic welfare of the country and coal is the usual fuel employed in their operation. It is common knowledge that coal creates dirt and cinders which in orderly process escape

through the smokestacks of engines. Science has made wonderful strides in the development of safety devices, but it has not produced a device which will prevent minute particles from escaping with the smoke from coal. Negligence can only arise from a failure of duty possible of performance. Cincinnati, N. O. & T. P. R. Co. v. Baxter, supra. It follows that no action will lie against a railroad company by the mere showing that customary dirt or cinders escaping through the smokestack of the engine fell into the eye of the injured person. If it were shown by the evidence that the cinders were unusual or extraordinary in size or quantity as was alleged in the petition, negligence might be inferred, but no such showing was made in this case.

Appellee testified "* * * When I looked up cinders and a hot cinder went into my eye * * *." In describing what occurred at the doctor's office she said,

"He (the doctor) prized my eye open and rakes out some cinders, and he put some medicine in my eye, and told me to go home and come back the next morning and he would see if he could get some more out. Next morning I went back and my eye was still swollen bad and he prized it open and he got out two small little pieces out of my eye."

Her daughter-in-law who was with her at the time of the accident described the occurrence in the following language:

"* * * I was standing on the top step and she was on the second or third step down, and she leaned up against the wall, and this engine came there and it was making a terrible noise or lot of racket and cinders began to fall, and Mrs. Sloan began to throw both hands up over her face. I took hold of her and her brother did. I brushed the cinders off her face and I told her to go to the Doctor, and I took her to Dr. Corum's office and he was not in, and I came back down with her, and she said, 'I will go to another.' and I says 'I will have to go back to my baby.' When I started back she started to another Doctor."

"Q9. How long did she appear to suffer from the injury to her eye? A. I stayed with her about three weeks.

"Q10. It was giving her trouble? A. Yes sir. I got up that night and bathed her eye all the night. The next morning we went to see Dr. Corum and he got some cinders out of her eye. That was the next morning after it was done.

"Q11. That was the second time he taken something out of her eye? A. Yes sir."

Dr. Corum related, "The first day as I remember I got one piece (cinder or dirt) and the next day I got about 3 pieces (cinders) out." He described the cinders as small. That was all the testimony offered on the quantity or size of the cinders and it will be seen that the evidence falls far short of showing that the cinders causing the injuries were cast from the smokestack in unusual or extraordinary quantities or size. To hold a railroad liable for injuries of this nature under the facts proven in this case would be to hold that all locomotives being operated by railroad companies are being operated in a negligent manner at all times. Central City Foundry & Machine Co. v. Illinois C. R. Co., 156 Ky. 759, 162 S. W. 81.

The evidence discloses that water was leaking from an injector and that the train was making unusual noise. It is obvious that water leaking from a defective injector had nothing to do with the accident and the fact that the unusual noise caused appellee to look in the direction of the engine could not be deemed to be the proximate cause of the injuries by the widest stretch of imagination. It is obvious therefore that although the petition stated a cause of action, the evidence did not support it and the trial judge should have sustained appellant's motion for a peremptory instruction.

Having reached this conclusion, it is unnecessary for us to discuss the contention that appellant's motion for a peremptory instruction should have been sustained on the ground that the plea of contributory negligence was not denied, and decision on that question is specifically reserved.

Appellee's contention that her motion to dismiss the appeal should have been sustained because the judgment was for less than $500 is without merit. The judgment awarded her damages in the sum of $200. This court has jurisdiction of an appeal from a judgment for as much as $200 and less than $500 when prayed in and

granted by this court, which was done in this case. Kentucky Statutes, Section 950-3; Appendix Civil Code of Practice, chapter 12, rule 15.

Judgment reversed for proceedings not inconsistent with this opinion.