## Louisville & N. R. Co. v. Ray.

March 16, 1948.

L. B. Handley, Judge.

858

H. T. Lively, J. P. Hamilton, J. L. Lenihan, Brents Dickinson and Rodes, Harlin & Willock for appellant.

Marion Vance and J. Wood Vance for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

Claude Ray, appellee, having recovered a judgment against Louisville and Nashville Railroad Company, appellant, for $875 for fire loss alleged to have been started by a locomotive of the company, the latter now brings us this appeal.

Appellant says that the judgment should be reversed because the following prejudicial errors were committed on this trial, viz., (A) peremptory instruction for the company was refused; (B) amended petition for Ray was permitted to be filed; (C) erroneous instructions to the jury were given.

A. On the question of the company's negligence, Ray proved that a fire destroyed, around 11:00 A. M., on April 16, 1945, his residence and smokehouse, together with contents; that the company's train had passed the residence, which was 108 feet from the railroad track, about 15 minutes before the fire was discovered; that the train had stopped, on this occasion, at a little station near the residence, had then started out with its locomotive wheels slipping or spinning; that an unusually strong wind had been blowing in a direct sweep from the locomotive's stopping place over toward the residence at the very time in dispute; that Ray's wife, who had been standing by the porch, had observed that the "train stopped and when it started it looked like it wanted to take off at a mad rush—there was a great puff of smoke and cinders fell and hit me and I heard

it hit along the side of the house and the roof;" that the residence roof had been constructed of wood shingles and that the fire had begun on this roof at a place about 6 or 8 feet from the kitchen chimney and on the railroad side of the roof's slope; that no fuel had been put in the kitchen stove for an hour and a half before discovery of the fire on the roof; that two days before the fire ("on Saturday before my house burned on Monday"), the company's locomotive, the very same one according to the company's evidence, had spun its wheels and had been "throwing cinders—it throwed them all over my team," which was then plowing in a field near the residence; that the place where the locomotive stopped and started on the day of the fire was "just a few feet further" from this residence than the 108 foot distance of shortest measurement between the track and residence.

Of course, many details of the above outline of evidence were strongly controverted by the company's own proof as presented on this trial. And, in addition, the company proved that this locomotive was equipped with the latest and best spark arresting device, which was in good condition on this occasion; that the train was on a descending grade and carrying a light load; that the locomotive was 233 feet from the kitchen roof at the time and place in controversy.

Of course, it is elementary to say that Ray's right to a submission of his case to the jury depended basically upon the strength and substance of the evidence, together with all reasonable inferences, produced by his own side, regardless of the contrasting strength and substance of the evidence produced by the company's side.

The company appears to argue that Ray's case failed because none of his evidence indicated that the "great puff of smoke and cinders" described by Mrs. Ray was hot or burning or incendiary as it reached the residence roof. But it would be a rather harsh requirement, we think, to rule that the property owner in a case of this kind must prove that the locomotive cinders were not only of unusual quantity but of ignitable temperature at the time of their trespass from nearby origin. In broad, open daylight it is practically impossible to see the glow of small cinders from any substantial

distance. And therefore, it seems reasonable in such a case as this to require only that the property owner shall show that the trespassing cinders came from a nearby offender guilty of some imprudent act; that they came in unusual quantity or sizes; that they fell on some kind of an inflammable material of the ignited property; that they presented a believable theory of causation after negation of other theories. We believe that Ray, under all the evidence presented on his side of the case and hereinabove set out in summary, substantially met these requirements and thus demonstrated his right to a submission of this negligence question to the trial jury for its decision. Our present holding in this case seems to be analogous to our holding in the case of Louisville & N. R. Co. v. Rains, 230 Ky. 132, 18 S. W. 2d 954. In that case there was no proof that the falling cinders were alive as they fell on the property owner's barn after traveling a distance of 150 feet or more on the wings of a brisk wind, and doubtless the reason for such lack of proof in that case lay in the fact that the fire occurred about 8 o'clock in the morning with the result that ordinary eyesight could not have discovered any glow of flying cinders in the bright presence of full daylight on that occasion.

Under all the proven circumstances of this case, we believe that the trial court committed no error in refusing to direct a verdict for the company.

B. The company also contends that the trial court committed prejudicial error in permitting Ray to file an amended petition on the day of trial.

The record shows that the amended petition, which was controverted of record by agreement, did not materially alter the pertinent issues of this case. It only increased the amount involved. While it is true that the sense and meaning of this pleading appear to be expressed in awkward fashion, yet the ultimate effect of its general purport, as already stated, was only that of increasing value, not that of changing the bull's eye of the main shooting match between the parties.

Sec. 134, Ky. Civil Code of Practice, sets out that a court may permit, at any time, the amendment of a pleading in order to correct a mistake, provided the amendment does not materially change the situation and

provided the final result is a furtherance of the ends of justice. This section of the Civil Code of Practice makes it self-evident that the trial court has, in the matter of permitting an amended pleading to be filed, a very wide latitude—in fact, a latitude about as wide as the restless bosom of the mighty deep. Accordingly, we have long since recognized that the only requirement for justification of the filing of an amended pleading is that of furtherance of justice coupled with unchanged condition in the basic controversy. Ford v. Providence Coal Co., 124 Ky. 517, 99 S. W. 609; City of Louisville v. Lausberg, 161 Ky. 361, 170 S. W. 962; Foxwell v. Justice, 191 Ky. 749, 754, 231 S. W. 509.

In view of the situation of the instant case, we are persuaded that the trial court committed no error in permitting Ray to file his amended pleading on the day of this trial.

C. Lastly, our attention has been directed to the trial court's instructions, which, appellant says, were erroneous.

No instructions were offered by the company, but its timely objections toward those given by the court were properly noted of record.

The first two instructions incorporating appellee's consolidated theory of improper equipment and improper management, as pled in his petition, were substantially similar to those set out in Stanley's Instructions to Juries at page 886. And we have heretofore declared that such instructions, following this same pattern, were properly given in this very type of case based upon facts of general similarity. See Louisville & N. R. Co. v. Guttman, 148 Ky. 235, 146 S. W. 731.

The appellant also contends that the court's fourth instruction was erroneous in permitting a recovery of damages for amounts calculable by improper methods of valuation. But we do not so interpret that instruction. And accordingly, we do not believe that the jury interpreted that instruction so as to sanction any valuations fixed by improper methods. Still further, appellant contends that this fourth instruction permitted a recovery on some items for amounts beyond valuations actually proven to exist. However, it seems apparent that by its award of $875 to Ray, the trial jury was calculating

his damages at nothing more than a mere part of the full, actual value of his residence. The jury provided for him to have the exact amount of money he had already received from proceeds of certain fire insurance carried on the residence. Some of the evidence for Ray had tended to show that the full present day worth of this residence would be $4000 or more. Therefore, in view of the size of this verdict and all the other circumstances presented by this case as we gathered them from this entire record, we now say that there is no indication that any possible error in the court's instructions was such as to prejudice any of the substantial rights of appellant, although admittedly some parts of the full complement of these instructions were, like a school boy's behavior, subject to some improvement. But we have held that where it reasonably appears that an error did not mislead the jury, or was such as did not superinduce or bring about an unjust verdict, a new trial will not be awarded nor the judgment reversed. Fowler v. Com., 157 Ky. 725, 163 S. W. 1115; W. H. Simmons & Co. v. Price's Adm'r, 238 Ky. 332, 38 S. W. 2d 6.

Wherefore, having given careful consideration to the assignment of errors directed to our attention by appellant and having found therein no prejudice against its substantial rights, we do now hereby affirm the judgment of the trial court.

Judge Latimer did not sit in this case.