CASE 69.—ACTION BY THE SADIEVILLE MILLING COMPANY
        AGAINST THE CINCINNATI, NEW ORLEANS &
        TEXAS PACIFIC RAILWAY COMPANY.—March 15,
        1910.

# Cin., N. O. & T. P. Ry Co. v. Sadieville Milling Co.

Appeal from Scott Circuit Court.

R. L. STOUT, Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1.  Railroads—Fires—Evidence.—In an action against a railroad
    company for the destruction of plaintiff's barn by fire, where
    there was no evidence of the presence of fresh cinders near
    the barn at the time of the fire, it was error to admit evidence
    that on several occasions defendant's trains had stopped
    there and cleaned the fire boxes of the engines, and that the
    cinders rolled down the fill near the track toward plaintiff's
    barn.

2.  Railroads—Liability for Fires.—A railroad company is not
    liable for damages done by sparks from its engines, where the
    latter are equipped with the most effective spark arresters
    in general use, unless there is negligence in the management
    of the engines.

3.  Railroads—Fires—Action for Damages—Evidence.—Where
    the railroad company showed that the spark arrester on the
    engine, which it is claimed caused the fire in question, complied with the statute as to spark arresters, it was proper
    for plaintiff to rebut this evidence by showing that, shortly
    before and after the fire, other engines, equipped with spark
    arresters of the same pattern, emitted large sparks and frequently set fires.

4.  Railroads—Fires—Sufficiency of Evidence.—The mere fact
    that engines passing shortly before and after the fire emitted sparks is not sufficient to make a prima facie case of
    negligence, in the absence of direct testimony or circum-

stances showing that the engines which passed before the fire emitted sparks, or were otherwise negligently managed.

5.    Railroads—Fires—Negligence—Question for Court or Jury.— Evidence as to the cause of the fire causing the damage sued for held to require a peremptory instruction for defendant railroad company.

BRADLEY & BRADLEY and JOHN GALVIN for appellant.

B. M. LEE for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COM-MISSIONER—Reversing.

Charging that appellant, Cincinnati, New Orleans & Texas Pacific Railway Company, had negligently burned its barn and certain personal property therein contained, appellee, Sadieville Milling Company, brought this action to recover damages. The jury awarded appellee the sum of $337. From the judgment based thereon, this appeal is prosecuted.

It is earnestly insisted by counsel for appellant that the trial court erred in refusing to award it a peremptory instruction. In view of the conclusion of this court, it will be necessary to determine only the propriety of the trial court's ruling in that particular.

The facts are as follows: Appellee's mill and grounds adjoin appellant's right of way. The tracks of the railway run north and south, and are located on the top of a fill. There are two tracks: The main track about 22 feet from the edge of the fill above the barn, and the passing track about 11 feet. At the foot of the fill there is a stone wall. From the edge of the fill to the top of the stone wall the distance is about 50 feet. The stable which was burned is about 20 feet from the wall. The space between the wall and the stable is occupied by a road. The

railway tracks are about 30 feet higher than the
ground on which the stable stands. The ridge of the
roof of the stable runs parallel with the tracks. The
stable was constructed of oak lumber; it had a tin
roof, a portion of which had been blown off at the
time of the fire. The loft of the stable was filled with
hay. There was testimony to the effect that the barn
where the roof had been blown off was burning when
the fire was discovered. There was also testimony to
the effect that the barn was not burning at this point
when the fire was first discovered by another witness,
but was burning in the north end; that is, on the side
opposite from the railway. The fire was discovered
about 4 o'clock in the morning. The only trains that
passed that night near the time of the fire were a
southbound freight which went by at 3 o'clock and
did not stop; a train which came in at 1:19, stopped,
and left at 2:18; one which came in at 1:50, stopped,
and left at 2:13, and one which went through at 1:23,
and did not stop. As to the cause of the fire, the evi-
dence for appellee is to the effect that both before
and after the fire, engines were seen passing by and
emitting sparks varying in size from that of a pea to
that of a man's thumb. Furthermore, that upon more
than one occasion appellant's trains had stopped at
that point and cleared out the fire boxes of the en-
gines. When this was done, cinders would roll down
the fill towards appellee's barn. It was also shown
that the ground around the stable was free from
grass or rubbish. The evidence for appellant is to
the effect that engine 684, which was hauling the
train that passed at 3 o'clock, and which was the only
engine passing within an hour and three-quarters of
the time of the fire, was equipped with a standard
spark arrester, and that this spark arrester was in

good condition. The engine was regularly handled.

We think the court erred in admitting evidence of the fact that on more than one occasion engines had stopped at a point near the barn, and had had their fire boxes cleaned out, and that the cinders therefrom would roll down the fill. Even if such a custom on the part of the railroad company could be shown, the evidence failed to disclose such uniformity in the custom as to make it admissible for the purpose for which it was intended. No one testified to the presence of any fresh cinders at the time of the fire, either upon the tracks or at the bottom of the fill. In the absence of such testimony we fail to see how the fact that on several occasions trains had stopped there, and the fire boxes of the engine had been cleaned out, and cinders rolled down the fill, would be competent to show that on the occasion in question the fire originated from that cause. As this evidence was inadmissible, the question, then, arises: Was the evidence that other engines before and after the fire emitted large sparks, considered in connection with the location of the barn, sufficient to justify the submission of the case to the jury? This court has never held that evidence that other engines threw out large sparks of fire was sufficient of itself to justify the submission of a case to the jury. Under the statute a railroad company is not liable for injury done by the escape of sparks from its engines, where its engines are equipped with the most effective spark arresters in general use, unless it is negligent in the management of its engines. When, therefore, the railroad company shows that the spark arrester on the engine, which it is claimed caused the particular fire, complies with the statute, it is competent for the party injured to rebut this evidence by show-

ing that, shortly before and after the fire, other en-
gines equipped with spark arresters of the same pat
tern emitted large sparks, and frequently set fire to
fences and grass at other places.

Thus, in the case of Kentucky Central R. R. Co.
v. Barrow, 89 Ky. 638, 20 S. W. 165, where there was
evidence that sparks came from a locomotive that
passed shortly before the fire, the court said: "The
question before the jury was whether the fire that
burned and injured appellee's property was caused
by sparks that escaped from the chimney of appel-
lant's locomotive which passed at noon of the day
mentioned, for no evidence was introduced tending
to show it originated otherwise; and as it was neces-
sary to resort to circumstantial evidence to show the
origin of the fire, it was competent to introduce any
evidence having a direct bearing upon the question.
In the absence of direct evidence as to the condition
of that particular locomotive on the occasion referred
to, evidence as to the usual condition of appellant's
engines which are run upon that road is competent."
In the case of L. & N. R. R. Co. v. Samuel's Ex'rs, 57
S. W. 235, 22 Ky. Law Rep. 304, the court used the
following language, which was afterwards approved
in I. C. R. R. Co. v. Scheible, 72 S. W. 325, 24 Ky.
Law Rep. 1708: "The law is well settled in this state.
that a railroad company, authorized by its charter
to use steam power, has necessarily the right to use
fire as a means of generating steam; and it is not
liable for injuries resulting from the sparks escaping
from its locomotive if it was furnished at the time
with the best and most approved screen and spark
arrester in practical use, when these appliances
were in perfect order, if not otherwise guilty of neg-
ligence in the operation of its engine.    But it is

equally well settled that, in an action against a railroad company to recover for loss by fire alleged to have resulted from negligence in operation, or for failure to have the spark arrester in proper condition, the testimony showing that sparks and cinders escaped from the locomotive in unusual quantities was competent, and will, of itself, warrant the presumption that the arrester was out of order, or was improperly adjusted, and that the defendant was consequently guilty of negligence in this regard." These cases clearly illustrate the purpose for which such evidence is admitted.

It has never been held that such evidence alone is sufficient to justify the conclusion that a fire resulted from the negligence of the railroad company. Thus, in the case of C., N. O. & T. P. Ry. Co. v. Falconer, 97 S. W. 727, 30 Ky. Law Rep. 152, it was shown that a few minutes before the fire was discovered a freight train passed Falconer Station, emitting sparks of considerable size. In the case of C. & O. R. R. Co. v. Richardson, 99 S. W. 642, 30 Ky. Law Rep. 786, there were a number of witnesses who testified that the passing train set fire to the house in question. In the case under consideration no one saw any of appellant's trains pass by on the night of the fire; no one testified as to sparks coming from them; nor was there any testimony as to how the trains were managed or operated. There was no testimony that any sparks were found in the vicinity of the fire. No large cinders were picked up near the barn. There is not even testimony to the effect that other fires had been started by appellant's engines near this point, shortly before or after the fire. To hold a railroad company responsible in this case would make it responsible in every case for

every fire occurring along its right of way, just so it was shown that its engines, shortly before and after the fire, emitted large sparks. While the courts have been liberal in authorizing the submission of this class of cases to the jury upon the ground that fires of this kind frequently occur in the night when no one is present, and it is impossible to make out a case except from the attendant circumstances, they have never gone to the extent of holding that the mere fact that other engines, shortly before and after the fire, emitted large sparks was sufficient to make out a prima facie case of negligence, in the absence of direct testimony, or some circumstances tending to show, that the trains which passed before the fire, and whose passing would reasonably account for the fire, emitted sparks of fire or were otherwise negligently managed.

For the reasons given, we conclude that the trial court erred in refusing to award appellant a peremptory instruction on the evidence now before us. The judgment is therefore reversed, and cause remanded for a new trial consistent with this opinion.