## Chesapeake & Ohio Railway Co. v. Preston.

(Decided April 18, 1911.)

### Appeal from Lawrence Circuit Court.

Railroads—Fires—Negligence—Sufficiency of Evidence.—In an action against a railroad company for damages for the negligent burning of a barn, evidence examined and held sufficient to support the verdict.

WORTHINGTON, COCHRAN and BROWNING for appellant.

H. C. SULLIVAN, F. L. STEWART and W. D. O'NEAL, Jr., for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

Appellee, Arthur Preston, brought this action against appellant, Chesapeake & Ohio Railway Company, to recover damages for the destruction of his barn and contents by fire which he alleged was due to the negligence of the railway company. The first trial resulted in a hung jury. Upon the second trial the jury returned a verdict in favor of appellee for the sum of $1,700. From the judgment based thereon, this appeal is prosecuted.

The only error assigned for reversal is the failure of the trial court to award appellant a peremptory instruction.

Appellant operates a line of railway from Ashland, Kentucky, to Pikeville, Kentucky. In the county of Lawrence there is a station known as Graves Shoals. The only buildings in the immediate vicinity of the station are a dwelling house, store room and barn belonging to appellee. These buildings are on the north side of the railroad track. The barn which was destroyed is located about 58 feet from the track, 227 feet west of the store room, and about the same distance from the residence. On the evening of March 31, 1910, appellant's southbound train, No. 38, drawn by engine 813, was about five minutes late, and reached Graves Shoals at about 6.21 p. m. About 6:50, or thirty minutes after the passage of the train, appellee's barn was discovered to be on fire. Including the basement the barn was three stories high, 71 feet long, and 36 feet wide. It also had sheds on three sides. The main building was covered with clapboards.

In the end of the barn next to the railroad there were three windows, two in the basement and one in the third story. Three or four panes of glass were missing from the third story window. Inside this window there was a quantity of hay. When the fire was discovered it was burning in the end of the barn containing hay, and also on the roof over the hay. The barn was on fire next to the railroad track. A slight breeze was blowing from the direction of the track towards the barn. One of appellee's employes was at work in the barn in the afternoon. After feeding and milking, he closed the barn about 5 o'clock. After that time there was no one around the barn, nor was there any person in there during the afternoon with a light. There was no fire in the basement, and nothing to indicate that the barn had caught on fire below. Only hay was kept on the third floor, while the live stock was kept on the ground floor. At the time of the fire there was an up grade at the place where the fire occurred.

While there was proof to the effect that other engines on appellant's trains were frequently seen to emit live sparks, there was also proof that engine 813, which was the regular engine on passenger train 38, sent out live sparks both before and after the fire. Shortly after the fire appellee and members of his family saw sparks of fire come from the engine of passenger train 38; and these sparks were seen to fly towards and drop in the vicinity of the former location of the barn. Shortly after the fire, appellee picked up cinders in the vicinity of the barn. While appellee and four or five others were on the platform when the train arrived, neither appellee nor the others testified that they saw any sparks coming from the engine of the train. It does not appear, however, that any of these witnesses were observing the engine for the purpose of seeing whether it was emitting sparks.

The testimony for appellant was to the effect that the spark arrester upon the engine in question was in position and properly equipped, that the train was properly handled, and no sparks were thrown out in the neighborhood of Graves Shoals. These facts were testified to by the engineer and fireman, and also by three other employes who examined and tested the spark arrester.

For appellant it is insisted that the facts of this case bring it within the rule laid down in C., N. O. & T. P. Ry. Co. v. Sadieville Milling Co., 137 Ky., 568. In that

case there was no evidence except as to the location of the barn, and the fact that other engines on other trains had been seen, both before and after the fire, to emit sparks. The case before us is much stronger. In addition to the testimony with reference to other engines, there is testimony to the effect that the identical engine on passenger train 38 was seen, both before and after the fire, to send out quantities of large sparks. Furthermore, the fire occurred within a short time after the train passed; it took place in that part of the barn next to the track and at a place where loose hay was so exposed that live sparks could come in contact with it. When the fire was discovered there was no fire at all in the basement. No person had been in the barn with any lights, and no one had been in the barn at all after about 5 o'clock. While it does not appear from what engine the cinders observed in the immediate vicinity of the barn were emitted, it is altogether probable that the same engine, which was seen to emit sparks immediately before and after the fire, emitted, at least, a portion of the cinders which were found. The fact that the same engine upon the same train was seen to emit sparks shortly before and after the fire, is a strong circumstance tending to show that the spark arrester was in the same condition at the time of the fire, and the probability that, under the same circumstances, it would do the same thing; and when this fact is considered in connection with the absence of any other plausible theory that would account for the origin of the fire, we can not say that there is no evidence justifying the conclusion reached by the jury.

Judgment affirmed.