## Louisville & Nashville R. R. Co. v. Hamburg-Bremen Fire Insurance Co., et al.

(Decided February 27, 1913.)

### Appeal from Marion Circuit Court.

Railroads—Destruction of Property by Fire—Action for Damages—Evidence—Sufficiency—Peremptory Instruction.—In an action against a railroad company for the negligent destruction of adjoining property by fire, evidence examined, and held insufficient to take the case to the jury, and that the court erred in failing to direct a verdict in favor of the defendant.

WILLIAM C. McCHORD, WILLIAM W. SPALDING, CHARLES H. MOORMAN and BENJAMIN D. WARFIELD, for appellant.

FLEXNER & GORDON and PROCTOR K. McELROY for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Mrs. Phoebe Lawrence owned a dwelling which was located between Wanda and Brumfield and about one mile north of Gravel Switch on the west side of the track of the Louisville & Nashville Railroad Company. On May 4, 1911, the house and contents were destroyed by fire. The house and contents were insured by the Hamburg-Bremen Fire Insurance Company for $700. The insurance was paid. The insurance company and Mrs. Lawrence brought this action against the railroad com-

pany to recover damages, the insurance company seeking the amount of the insurance, and Mrs. Lawrence asking judgment for the difference between the insurance and the value of the house and contents. The petition charged that the property in question was set on fire by sparks from one of defendant's locomotives, and was due to the negligence of the defendant not only in the management and operation of its locomotive, but in failing to provide and maintain on its engines suitable and proper appliances for preventing sparks of fire from escaping therefrom. The allegations of the petition were denied by answer. A trial before a jury resulted in a verdict and judgment in favor of plaintiffs for $1,002.85. The defendant appeals.

The dwelling in question faced the railroad. The comb of the roof was practically parallel with the railroad. The roof sloped toward and from the railroad. The chimney of the house came out of the roof near the middle of the comb. When the fire was discovered, it was on the side of the roof that sloped toward the railroad and about five feet west of the chimney and two feet from the comb. There was a strong wind blowing from the northeast. As the track at that point runs east and west, the direction of the wind in going from the track may be represented by the hypotenuse of a right angle triangle. The witnesses place the distance of the house from the railroad at from 125 to 140 feet.

Mrs. Lawrence says that when she discovered the fire it was about ten minutes after eleven o'clock. Her attention was called to it by Mrs. Orbeson. She made a fire in the kitchen stove about five o'clock a. m. She also made a coal fire in the sitting room. The fire was almost out, when her husband laid a lump of coal on the fire about as large as her head. She saw both passenger trains pass, but did not testify that any sparks were being thrown from the engine, or to any facts showing that the engines were being negligently operated. On other days before the fire she frequently had heard cinders falling on the roof. When she discovered the fire, a place in the roof about four feet square was burning. At that time the lump of coal in the fire place was still burning. On cross-examination she stated that after breakfast she washed the dishes and put them away and then swept the kitchen. After that she fed the chickens. She then came into the house and fixed the churn, and

started up the fire in the fire place. She started the fire with a handful of shucks, cobs and chips. The roof was a shingle roof.

Mrs. Orbeson, who lived on the other side of the railroad, discovered the fire about twelve o'clock. She noticed a train passing by at 11:40. The train was going towards Gravel Switch. It was very dry, and there was a high wind blowing from the northeast. Along in the spring she had noticed sparks and cinders in vessels around her house that came from passing trains. Her house was about 100 feet from the railroad. Upon discovering the condition of Mrs. Lawrence's house, she went to Mr. Stines and told him the house was on fire. About ten o'clock she saw black smoke coming from the chimney of the residence. At that time she was in her millet patch. Other witnesses place the time of the fire between 11:30 and 12 o'clock. There is also evidence to the effect that a short time prior to the fire, the fields along the right of way had been set on fire by sparks from engines of the defendant company, and that large cinders had been found along the property on both sides of the railroad in the vicinity of the Lawrence home.

The evidence for the defendant is that a large quantity of black smoke was seen coming out of the chimney of the Lawrence residence along about ten o'clock. No northbound train passed the Lawrence home after nine o'clock until after the fire. The last two southbound trains that passed on the morning of the fire were trains Nos. 23 and 89. No. 23 passed the Lawrence home about 10:05 a. m. Freight train No. 89 passed about 10:20 a. m. The engineers of both of these trains swear that neither of their engines was emitting sparks at the time they passed the Lawrence home. In going north from Gravel Switch there is an ascending grade which ends at a point about 50 or 75 yards north of the Lawrence home. Each of the engineers also claims that his engine was being properly operated at the time. Several boiler inspectors testified to having inspected the engines in question, and the spark arresters thereon were properly equipped and in good condition.

Mrs. Stines testifies that she observed the Lawrence home about 10 o'clock and there was a big black smoke coming out of the chimney. She also said that she had had a talk with Mrs. Lawrence. Mrs. Lawrence said she did not know what caused the fire. She said she made a

right smart of a blaze out of shucks and cobs, and sat down and went to sleep. She said she thought she would get dinner, but Mr. Lawrence was not there, and she waited for him to get some coffee, and she thought she would wait a while on the dinner.

Though plaintiff and Mrs. Orbeson saw three trains pass before the fire, neither of them testifies that any one of the trains was emitting sparks or even throwing out much smoke, or to any facts showing that the trains were being negligently operated. No sparks or cinders of any kind were picked up in the vicinity of the Lawrence home or between it and the railroad. There was not only no evidence that any one of the locomotives of the trains emitted sparks, but there was no evidence going to show that the particular engine on any one of these trains had, a short time before or after the fire, emitted sparks. While it may be true that the fire in the stove was out, the weight of the evidence is to the effect that at the time the fire on the roof was discovered there was a fire in the sitting room, though the witnesses differ as to its size. The only evidence relied upon for the submission of the case to the jury is that the house was located 125 or 140 feet from the railroad. The train passed a few minutes before the fire. The weather was dry, and a high wind was blowing from the railroad in the direction of the house. The roof of the house was of shingles. The fire was discovered in the roof and on the side of the roof nearest the railroad. A short time before and after the fire large sparks or cinders had been seen in the adjoining fields, and the fields had been set fire to by such sparks.

In the case of C. & O. Ry. Co. v. Preston, 143 Ky., 189, there was testimony to the effect that the identical engine on passenger train No. 38 was seen both before and after the fire to send out quantities of large sparks. The fire took place in that part of the barn next to the track, and at the place where loose hay was so exposed that live sparks could come in contact with it. When the fire was discovered there was no fire in the basement. No one had been in the barn with any lights, and no one had been in the barn at all after five o'clock. The court held upon these facts that the case was one for the jury. We are not, however, disposed to extend the doctrine any further. In this case it is not shown that the particular engine, both before and after the fire, emitted large

sparks. The house was occupied and there was a fire in the house, though there is a dispute as to the size of it. Plaintiff had put shucks and cobs on the fire. It is just as probable that the roof caught from a spark from the fire as a spark from a passing train, in the absence of any evidence tending to show that any passing train was emitting sparks, or that sparks were picked up in the vicinity of the fire. It was necessary for plaintiffs to show facts from which it could be reasonably inferred that the fire was due to the negligence of the defendant. Having failed to do this, we conclude that the court erred in refusing defendant a peremptory instruction.

Judgment reversed and cause remanded for new trial consistent with this opinion.