## Illinois Central Railroad Company v. Scheible.

(Decided February 2, 1915.)

### Appeal from Hardin Circuit Court.

1. Railroads—Fires—Instructions.—An instruction telling the jury that "they should find for the plaintiff if they believed from the evidence, either, that said engine was not equipped with the best or most approved screen or spark-arrester in practical use and in perfect order, or that the engine in question was operated by defendant's agents, servants and employes in a careless and negligent manner, and thereby sparks from said engine were thrown upon the house which was burned, and set it upon fire and destroyed it," was not objectionable.

2. Railroads—Fires—Evidence.—Direct evidence is not indispensable to a recovery in this class of cases. Circumstantial evidence is equally as sufficient as direct evidence would be when the circumstantial evidence connects the sparks from the passing train with the fire.

TRABUE, DOOLAN & COX and WILLIAMS & HANDLEY for appellant.

GEORGE HOLBERT and STANLEY A. BERRY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This is a suit to recover damages for the value of a house alleged to have been destroyed by fire started by sparks from one of the railroad company's engines. There is nothing about the case to take it out of the usual class of cases of this character. The law controlling the rights and liabilities of the parties is so well settled that there was hardly any room for error to be committed, and so far as the law of the case is concerned no error prejudicial to the substantial rights of the railroad company appears in the record.

The court told the jury that "they should find for the plaintiff in this action if they believed from the

evidence, either, that said engine was not equipped with the best or most approved screen or spark arrester in practical use and in perfect order, or that the engine in question was operated by defendant's agents, servants and employes, then in charge of it, in a careless and negligent manner, and thereby a spark or sparks from said engine was thrown upon the house which was burned, and set fire to said house, thereby destroying same.''

This instruction is criticised because it put upon the railroad company the duty of using the best or most approved screens or spark arresters in practical use and in perfect working order. The instruction given is the one that was approved by this court in C. & O. Ry. Co. v. Richardson, 99 S. W., 642, 30 Ky. L. R., 786.

In L. & N. R. R. Co. v. Guttman, 148 Ky., 235, an instruction telling the jury that it was the duty of the railroad company ''to furnish its engines with the best screens or spark arresters known to science in practical use for preventing the escape of sparks,'' was approved, and there is no substantial difference between the two instructions. The wording is different, but the idea in both of them is the same, as each of them put on the company the duty of equipping its engines with the best screens or spark arresters in practical use.

The use of the words ''and in perfect order'' is criticised, but we do not think this criticism is well founded. It is as much the duty of the company to keep its screens in order as it is to use the best or most approved type, and if the screen is the best or most approved screen in practical use, this would necessarily imply that it was in perfect order, for, if it was not in such order, it would not be the best or most approved screen in practical use.

The principal grounds relied on for reversal are that the evidence did not show that the fire started from a spark that escaped from an engine, or that the train was carelessly or negligently handled or operated, or that the engine was not equipped with the kind of spark arrester required.

The evidence shows that the house that was destroyed was situated some 80 or 90 feet from the track; that the weather was dry and the wind blowing from the track in the direction of the house; that the fire was discovered in the roof of the house about twenty minutes after the engine passed that it is charged set the house on fire; that the fire was discovered shortly after nine o'clock

and there had been no fire of any kind about the house that morning except a small wood fire that was made in the stove between six and seven o'clock for the purpose of getting breakfast, and which had died out about seven o'clock, or very soon after breakfast was over. There was also evidence that this engine and other engines had been throwing out live sparks within a few days previous to this and that these sparks had set fire to grass and weeds in the vicinity of the house that was burned.

There is no direct evidence that sparks from the engine of the train that passed a few minutes before the fire was discovered set the house on fire, but direct evidence is not indispensable to a recovery in this class of cases. Circumstantial evidence is equally as sufficient as direct evidence would be when the circumstantial evidence connects the sparks from the passing train with the fire. It would be an exceedingly difficult and in many cases an impossible thing for the owner of property destroyed by fire to show by direct and positive evidence that the fire was started by sparks from a passing engine. In the night time live sparks falling from engines are very discernible, but in the day time live sparks, although of sufficient heat to set fire to dry material, cannot well be seen by the naked eye as they come from the smokestack of the engine, and yet in many cases, including this one, circumstantial evidence leaves little room for doubt as to the origin of the fire.

Several witnesses, who were in or about the house at all times during the morning of the fire and preceding it, testified very clearly and directly and without contradiction that there was no fire in or about the house from which the fire that destroyed it could have been started. Accepting as true the statements of these witnesses, as the jury had a right to do, and as we may well assume they did, it is apparent that the fire must have originated from some outside source, and under the evidence there was only one source from which it could have started, and that was this passing engine.

A witness testifies that on the day before this fire a fire was started near this house by this identical engine, and there is abundant evidence in the record that within a short time before this fire a number of fires were started in the neighborhood of this house by passing trains.

The case of C., N. O. & T. P. R. Co. v. Sadieville Milling Co., 137 Ky., 568, is relied on by counsel for appellant as authority for the proposition that the evidence in this case was not sufficient to take it to the jury. But in that case the court said:

"In the case under consideration no one saw any of appellant's trains pass by on the night of the fire; no one testified as to sparks coming from them;  *  *  * there is not even testimony to the effect that other fires had been started by appellant's engines near this point, shortly before or after the fire."

The case of Louisville & Nashville R. R. Co. v. Hamburg-Bremen Fire Ins. Co., 152 Ky., 510, is also relied on for the same purpose, but in that case the court said: "There was not only no evidence that any one of the locomotives of the trains emitted sparks, but there was no evidence going to show that the particular engine on any one of these trains had, a short time before or after the fire, emitted sparks. While it may be true that the fire in the stove was out, the weight of the evidence is to the effect that at the time the fire on the roof was discovered there was a fire in the sitting room, though the witnesses differ as to its size. The only evidence relied upon for the submission of the case to the jury is that the house was located 125 or 140 feet from the railroad.  *  *  * The house was occupied and there was a fire in the house, though there is a dispute as to the size of it. Plaintiff had put shucks and cobs on the fire. It is just as probable that the roof caught from a spark from the fire as a spark from a passing train, in the absence of any evidence tending to show that any passing train was emitting sparks, or that sparks were picked up in the vicinity of the fire."

It is, we think, plain that the facts of these cases are so different from the facts of the present case that they should not be regarded as controlling authority.

On the other hand, in C., N. O. & T. P. R. Co. v. Falconer, 30 Ky. L. R., 152, and Chesapeake & Ohio R. Co. v. Preston, 143 Ky., 189, among many others of like character, this court has held that circumstantial evidence similar to that appearing in this record was sufficient to submit the case to the jury and sustain a verdict.

It is further urged that as the evidence for the railroad company showed that the spark screen or arrester on this particular engine was in perfect order on the day

of the fire, and that the engine was being operated with ordinary care, these facts were sufficient to support the conclusive presumption that the fire could not have originated by sparks thrown from this engine.

In response to this argument we may repeat what was said in Southern Ry. in Kentucky v. Hanna, 21 Ky. L. R., 850, where it was said: "There was testimony tending to show that the engine had the latest improved spark arrester, and that it was in proper condition, but there was testimony which tended to show that if it had been in proper condition it could not have emitted sparks which would have set fire to the grass. While this testimony tends to rebut the circumstantial evidence of the plaintiff, yet the jury considered the testimony in connection with the other testimony and concluded that the loss was occasioned by sparks from the engine. Having reached this conclusion the testimony was abundant to show that if the spark arrester had been in proper condition the fire would not have been caused by sparks emitted from the engine. The jury was the judge of the facts and we are not disposed to disturb its verdict." To the same effect is L. & N. R. R. v. Home Insurance Co., 146 Ky., 281.

Upon the whole case we find no reason for interfering with the judgment, and it is affirmed.