## Louisville & Nashville Railroad Company v. Brewer.

(Decided June 1, 1916.)

### Appeal from Henry Circuit Court.

1. Railroads — Negligence — Fires—Circumstantial Evidence. — Circumstantial evidence tending to show that a fire resulted from a negligent act of defendant is sufficient in a suit to recover for the resultant loss to carry the case to and uphold the verdict of the jury.

2. Railroads—Negligence—Fires.—Evidence that a locomotive engine was emitting unusual quantities of hot cinders, some of which were the size of the end of the little finger, sufficiently contradicts evidence that the engine was at the time equipped with the latest and most approved spark arrester in proper adjustment to present an issue of fact for the jury as to whether the railroad company was at the time negligent in the operation or equipment of the engine.

3. Railroads—Fires—Judicial Notice.—The court will not take judicial knowledge that hot sparks will or will not carry 361 feet from a locomotive engine.

4. Railroads—Fires.—Evidence that cinders hot enough to scorch the canvass on a tobacco bed were found farther from the railroad tracks than the distance of the fire from the tracks, in the same vicinity and within six months of the fire, was competent for the purpose of showing the possibility and the probability of the fire having been caused by sparks from the railroad company's engine.

5. Railroads—Damages—Measure of Damages.—The measure of damages for the negligent destruction of a barn and crib upon a farm in the country is the reasonable value thereof to the owner.

MOODY & BARBOUR and BENJAMIN D. WARFIELD for appellant.

EDWARDS, OGDEN & PEAK, TURNER & TURNER and R. F. PEAK for appellee.

Opinion of the Court by Judge Clarke—Affirming.

Lon Brewer owns a farm at Hill Springs in Henry county through which the tracks of the Louisville and Nashville Railroad Company run between his residence and barn. His residence is located on the north side, and about seventy-five feet from the railroad tracks, while his barn and crib are on the south side, and 400 and 361 feet respectively from the tracks.

On the 24th of July, 1914, between seven and eight o'clock in the evening, one of the railroad company's freight trains going East passed appellee's place, at which time he was milking a cow at a point about half way between the railroad track and his barn, and his daughter was standing nearby.

Both appellee and his daughter testified that as the train passed, "a wind, that was not a high wind," was blowing from the direction of the railroad toward the barn, and that the engine was emitting large quantities of cinders that fell upon and about them, and that some of these cinders were hot or "alive." One of appellee's witnesses testified that just a short distance from appellee's place when this same train passed him, he was about twenty-five feet south of the track, and the engine was then emitting quantities of cinders, some of which fell upon and about him, and that some of the cinders were as large as the end of his little finger and alive. Appellee testified that after he had finished milking he went to his residence without having been near the barn or crib, and that about nine o'clock, directly after he had retired, he discovered that both his barn and crib were on fire, and that the fires were confined to the roofs of both buildings; that upon that evening and for a long time prior thereto there had been no fire about either his barn or crib, nor near thereto from which the fire could have originated. He testified that he had known of live sparks being carried from an engine a distance of 400 or 500 feet, and one of his witnesses testified that he had seen sparks from an engine upon the canvas of a tobacco bed 150 yards from the railroad track, and these sparks had scorched the canvas.

Appellant's evidence was to the effect that the engine upon this occasion and at this place was not emitting sparks; that it was properly equipped with the latest and most approved spark arrester, which upon inspection

three days before, and again three days after the fire, had been found in perfect order; that live sparks from an engine could not be carried anything like 400 feet.

In appellee's petition to recover from appellant his loss from the destruction of the barn, crib and their contents, he asserted a damage of $1,620.00.

Appellant's defense was a denial of every material allegation of appellee's petition, and upon trial the jury found a verdict for appellee in the sum of $900.00. To reverse the judgment entered upon this verdict appellant is urging numerous errors below, all of which are included in the following: (1) That its motion for a directed verdict should have been sustained. (2) That the court admitted incompetent evidence for the plaintiff and rejected competent evidence for the defendant. (3) That the court erred in its instructions to the jury.

Appellant urges that it was entitled to the peremptory instruction because there was no evidence tending to show that the fire was caused by its negligence, and upon the ground that the court will take judicial notice that a live spark from the smoke stack of a locomotive will not carry for the distance between its track and appellee's barn and crib. While it is true that there is no positive evidence that a spark from appellant's locomotive set fire to either of appellee's destroyed buildings, it has been uniformly held by this court that in an action of this kind circumstantial evidence that tends to show the fire resulted from a negligent act of the defendant is sufficient to carry the case to and uphold the verdict of the jury. I. C. R. R. Co. v. Scheible, 162 Ky. 470; L. & N. R. R. Co. v. Guttman, 148 Ky. 235; L. & N. R. R. Co. v. McArthur, 163 Ky. 296; C. & O. R Co. v. Snyder, 164 Ky. 433; Southern Ry. Co. v. Hanna, 21 K. L. R. 850; L. & N. R. R. Co. v. Feeney, 166 Ky. 702; L. & N. R. R. Co. v. Home Ins. Co, 146 Ky 282; K. C. R. Co. v. Barrow, 89 Ky. 643.

Appellant insists that its proof of the use and inspection of the spark arrester is conclusive upon the question of the negligent operation of the train. This, however, is not correct, because the evidence of appellee shows that, in spite of this engine's equipment, it was actually emitting live sparks, some of which were the size of the end of the little finger. Such evidence has frequently been held by this court to present an issue of fact for the jury upon the question of negligence in the

operation of a train. L. & I. R. R. Co. v. Roemmele, 157 Ky. 84; L. & N. R. R. Co. v. Samuels, 22 K. L. R. 303; L. & N. R. R. Co. v. Taylor, 92 Ky. 55, and Mills v. L. & N. R. R. Co., 25 K. L. R. 488.

Nor is appellant's contention that the court will take judicial notice that live sparks from an engine may not be carried a distance of 361 feet, the distance involved here, because, so far as we know, it is not a matter of common knowledge that such sparks may not be carried that distance, and we see no relation to the question involved in any of the three cases cited by appellant in support of its contention upon this question, viz.: L. & N. R. Co. v. Mitchell, 17 K. L. R. 977; L. & N. R. Co. v. Daniel, 122 Ky. 256, and Muller v. Oregon, 208 U. S. 412.

Neither will the court take judicial notice that sparks may be carried that distance, and it was incumbent upon the plaintiff to prove it. This he sought to do by introducing evidence that upon other occasions live sparks from a locomotive had been carried a greater distance than that involved here. Appellant strenuously objected to the introduction of this evidence, and its admission is one of the assigned errors which it urges now as prejudicial. This objection is upon the ground that the other occurrences were too remote in time and that conditions were not shown to have been the same then as existed when this fire occurred. To support its contention that the other occurrences were too remote, appellant cites Stowe v. L. & N. R. Co., 140 Ky. 291, and C., N. O. & T. P. Ry. Co. v. Sadieville Milling Co., 137 Ky. 568, in the former of which it was held error to admit testimony that an engine emitted live cinders upon occasions more than three months before and after the fire of which Stowe complained, and in the latter case it was held that evidence of other occasions to be competent must be confined in time to shortly before or after the fire. Counsel for appellant overlooked the fact that in these cases as well as in the case of C. & O. R. Co. v. Meek, 169 Ky. 775, in which the same position was taken with reference to such evidence, the court was confined in its examination of such evidence to the question whether or not the engine at the time of the loss was emitting cinders in unusual quantities such as would indicate its negligent or careless operation, although equipped with a proper spark arrester, and in the case of C. & O. R. Co. v. Meek, *supra,*

this court pointed out that upon that question such evidence was competent only when confined to a reasonable time before or after the loss complained of, and stated further that upon request it would have been the duty of the trial court to have limited the consideration of such evidence to that particular point.

In the case at bar the evidence complained of was not introduced or competent upon that question. Appellee made out his case upon that point by testimony of himself and his daughter, and by his witness, Hunt, that at the particular time the engine was seen emitting live sparks in quantities and of a size indicating negligent operation or equipment of the engine. The evidence was introduced in this case upon another question altogether, and that question was whether or not the sparks actually seen coming from the engine and going in the direction of the barn could have, within the range of physical possibilities, reached the buildings destroyed in condition to start the fire. The plain reason that evidence of other occurrences, to prove whether the engine in question was or was not emitting cinders, must be confined to within a reasonably short time before or after the accident in order that it may have any probative value, can have but little, if any, application when the fact to be determined is, as in this case, the distance sparks or cinders from an engine with enough heat to start a fire can be carried.

The determination whether an engine, identified or not, at a particular time, was emitting cinders, depends, of course, upon the operation and equipment of the engine, and because of frequent changes in the condition and equipment of engines it has been held that the evidence upon this question, to have any probative value, must be confined to within a reasonable time of the fire complained of. But the determination of how far cinders from a locomotive will carry does not depend materially upon the equipment or operation of the engine, and hence is but little, if at all, affected by changes in these respects. The distance a cinder, retaining enough heat to set a fire may carry, depends almost exclusively upon the weather conditions and velocity of the wind at the time, so we can see no good reason why evidence of the distance live cinders can travel ought to be limited so nearly to the time of the accident. It was

not the alleged negligence resulting from the equipment or management of the locomotive, but was the consequences of physical laws that such evidence was meant to prove. The one changes frequently, the other not at all.

Evidence of the one to be of force or value must necessarily be confined nearly to the time of the accident, but no such reason exists for so confining the other. Certainly not to such narrow limits. Of course, the value of such evidence is enhanced if conditions at the time of the other occurrences were the same as the conditions existing at the time of the accident, but it is rarely possible to prove with any degree of certainty the exact physical conditions prevailing at either time; nevertheless the evidence does not lose all of its force because of that fact, and there is manifestly some probative value in evidence of the fact that under any conditions hot cinders from a locomotive may travel farther than the distance involved on trial, and the jury and not the court must weigh the evidence to fix its value. There is some confusion in the decisions on the admissibility of evidence of other fires and emission of cinders upon other occasions, especially in regard to the time permissible between the other fires or emissions and the fire on trial, much of which apparent confusion results from a failure to clearly distinguish between the purposes of the evidence offered in the different cases.

We do not decide that upon the question of how far live cinders can travel there should be no limitation upon the time between the other occurrences sought to be proven and the act complained of in the action, but we do hold that the same limitation applicable to evidence tending to prove negligence in the operation or equipment of an engine does not apply where the purpose of the proof is to prove the possibility, and therefore the probability, of live cinders traveling the distance involved in the action. In the case before us the other occurrences permitted to be proven were within six months of the fire involved, and it was not error, in our judgment, to admit such evidence for the purpose of showing the possibility of live cinders being carried the distance involved.

Our conclusion upon this question is supported by the cases of Campbell v. Railroad, 121 Mo. 349; Matthews v. Mo. Pacific Ry. Co., 142 Mo. 645; Hoskinson v.

Central Vt. Rd. Co., 66 Vt. 618; Florida East Coast R. Co. v. Welch, 12 Am. & Eng. Anno. Cas. 210, and many other cases cited in the note thereto.

No other cause for the fire was presented by the evidence and there was proof that it was very dry at the time; that the roofs of the barn and crib were of old shingles covered with moss; that one of appellant's freight trains passed within 361 feet of the corn crib within about an hour of the discovery of the fire; that the engine of the train at the time was emitting large quantities of hot cinders, some of which were the size of the end of the little finger; and that the wind was carrying the cinders thus emitted in the direction of the destroyed buildings. This proof, though contradicted, in connection with some proof at least that in this vicinity and within six months of the time, cinders of the same character were found at a distance farther from the railroad than the distance involved here with enough heat in them to scorch the canvas upon a tobacco bed, was sufficient to carry the case to the jury, and the court did not err in overruling appellant's motion for a directed verdict.

The objections to the instructions given, except the one upon the measure of damages, are based upon the assumption that there was not sufficient evidence to carry the case to the jury, and since we have heretofore disposed of that proposition, such objections need no further consideration.

The instruction upon the measure of damages is as follows:

"No. 3. If the jury find for plaintiff, they should award him in damages the reasonable value of his barn and crib, and reasonable value of the contents thereof, that were destroyed by fire, the whole award, if any, not to exceed $1,620.00, the amount claimed in the petition."

It is the contention of appellant that the correct measure of damages was the difference in the market value of appellee's property before and after the destruction of the buildings, but in the case of C., N. O. & T. P. R. Co. v. Falconer, 30 K. L. R. 152, relied upon by appellant, this same contention upon similar facts was denied, this court in that case saying:

"If the injury is such that it cannot be repaired by bestowing something upon it, or adding to the injured property, then the measure of damages would be the

value of the property just before its injury and its market value afterward. The latter measure is adopted, not as the ideal one, but as the surest of which the case is susceptible. If the houses burned and sued for in this suit added little or nothing to the market value of the land upon which they were situated, because perhaps there was no market at that place for a storehouse or tenement houses of that class, it is nevertheless true that the owner was entitled to them uninjured by the negligence of any one else; and her right is, as against any one tortiously destroying them, to have her condition restored by giving her such sum in money as will replace the destroyed tenants. This was the measure applied by the circuit court.''

The authorities upon this question are reviewed in L. & N. R. R. Co. v. Beeler, 126 Ky. 328, and the instruction given here is in accord with the rule prevalent in this State.

Wherefore, the judgment is affirmed.