## Louisville & Nashville Railroad Company and Lexington & Eastern Railway Company v. Hobbs, Administrator.

(Decided April 30, 1920.)

## Appeal from Lee Circuit Court.

1. Railroads—Fires—Defects in Construction of Engines.—In a suit to recover damages from a fire caused by sparks from passing engines, though the company's evidence showed the spark arresters were of the most approved pattern and properly adjusted, the case was one for the jury where it was testified by people living on each side of the house destroyed by fire that the engines passing the house one-half hour before the discovery of the fire emitted large sparks and in great number

2. Railroads—Fires—Defects in Construction of Engines.—Evidence of a circumstantial nature, which tends to show that a fire was caused through some negligent act of the railroad company, is sufficient to take the case to the jury. Direct evidence that the house was fired by sparks from engines is not necessary.

3. Railroads—Fires—Defects in Construction of Engines.—Evidence that other engines on other occasions emitted sparks or that other fires occurred was not prejudicial where it is conceded that

if the house was set fire by engines it was those alleged in the pleadings and shown in the proof.

BENJAMIN D. WARFIELD and HURST & ROSE for appellants.

J. M. McDANIEL, E. C O'REAR and J. B. ADAMSON for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

F. W. Morgan resided with his family, consisting of eleven children, adjacent to the right of way of appellants, at a point between Fincastle and Torrent. The track in front of the house was on a considerable elevation. The eaves of the house were level with the roadbed. At this point there is a one per cent grade and what is termed a double or reverse curve. A portion of the house was constructed of logs, chinked with mud, the remainder was built of planks; there were three rooms below and one above; the house was old; the roof in places cupped and warped, leaves and trash had accumulated on the roof; there was a fireplace with a stone chimney in the sleeping or living room, also a chimney in the kitchen with an opening for the pipe from the kitchen stove  The upper room, void of windows, was reached by a stairway from the sleeping room below. There was a door to this stairway.

February 9, 1915, the family had supper about 4:30 p. m.; all had retired four hours later. The only fire in the house since supper was in the sleeping room. At the time the last of the family retired this consisted of but a few live pieces and the back log.

Three of the boys, aged 17, 21 and 22, slept in the upper room, two in one bed, the third in another. About one o'clock a. m., February 10, the house was destroyed by fire and two of the boys were burned to death. This is a suit seeking damages for the loss of one of them, Bert Morgan. There was a judgment in appellee's favor of $10,000.00, to reverse which this appeal has been taken.

The main insistence is there should have been a peremptory instruction, but with this contention we can not agree. It is conceded that train No. 26, a double-header, with engines Nos. 913 and 923, pulling some thirty odd cars, passed the house about 12:30 that night, going north. After it passed the Morgan house the head

engine became uncoupled from the second, but they were soon recoupled and the train proceeded on its journey. Walter Morgan, who was sleeping in the upper room, and in the same bed with one of his brothers, heard the train; after it passed he went to sleep and when he awakened about thirty minutes later the fire was over him in the roof and over the stairway. The fire was falling at the foot of the bed and down on the stairway; he managed to break his way through the roof by pushing off some boards and reached a place of safety. There was no lamp or light of any kind in the upper room that night. The door on the first floor leading to this room was closed when he retired.

The father says that when he found the house on fire there was no fire in the lower room. There was a fire on the top of the roof; it was burning on the side next to the railroad Two of the children testify that the roof was on fire between the two chimneys on the railroad side. A number of witnesses say there was a slight wind blowing from the railroad towards the house. The house was located 58 feet from the railroad.

One witness who lived about a mile and a quarter south of the Morgan house, on the same side of the railroad, saw train No. 26 as it passed that night; it was 12:30 by his clock; both engines were throwing fire; he was so apprehensive that he took his lantern and went out to look at his stock and barn to see if there was any fire; the sparks fell across his yard at a point some sixty feet from the track; the coals were as large as one's thumb, or something like that; the engines were still throwing fire when they passed out of his sight; he watched the train for some two or three hundred yards.

Another witness, now employed by the appellant, at the time of the fire lived about half a mile north of the Morgan house. He heard the train pass—it was pulling hard and going slow—he heard it stop; he got up, lighted the lamp to see what time it was; it was about one o'clock; he raised the window and looked out. He watched the train until it passed the house and out of sight; he did this because he had some fodder close to the barn and was afraid it would take fire. His house is about 150 feet from the track. Large cinders were coming from the smoke stack. He did not know whether the engines

were throwing more cinders than usual; he does not say what was the usual quantity of cinders thrown.

On behalf of the appellants it was shown that both engines pulling No. 26 were equipped with fire arresters of the most approved design; one of them was inspected February 5th, the other February 6th; one of them re-inspected on the 9th; both were again inspected the afternoon of the 10th, and on each occasion they were found to be in good order and properly adjusted. The mesh was about three-sixteenths of an inch.

It is urged that in view of this testimony it would have been impossible for cinders as large as one's thumb to have been emitted from the smoke stack. Three members of the crew say that as the train passed the Morgan house they saw a light that resembled the reflection of a fire in the grate. It was admitted that some cinders and sparks were thrown by the engines, but not large ones, nor in unusual quantities; that on an up grade it is necessary to keep the fire in the engines well coaled, which was done, and under such circumstances fewer cinders are emitted than when the fire is allowed to go down. A witness who examined the chimneys after the fire says there were cracks or spaces between the stones. It is contended that because of the fire in the Morgan home when the family retired and of the aforesaid condition of the chimney that it is just as probable the house was destroyed through a spark from that fire as by one from the engines, and this being true the jury could only guess as to the cause of the fire, and this they are not permitted to do. What, if any, effect the fire may have had upon the mud between the stones of the chimney the record does not show. There is no evidence of its condition prior to the fire.

We have written a number of times that in actions of this character direct evidence that the house was fired by sparks from an engine is not necessary; evidence, circumstantial in nature, which tends to show that the fire was caused through some negligent act of the company being sufficient to take the case to the jury, and to uphold a verdict at their hands. As has been said, it is extremely difficult, and oftentimes impossible, for the property owner to show by positive evidence that the fire was caused by a passing engine. But in the present action the facts are really stronger in appellee's favor

than in many of the reported cases. Here we have the testimony of two people, a short distance from the Morgan house, one on each side, who saw sparks coming from the engines, and the further fact that the house was destroyed by the fire discovered about one-half hour after the train passed. Considering that the wind was blowing in the direction of the house; the inflammable condition of the roof; the proximity of the house to the railroad; that this was a heavy train on an up grade and a reverse curve; fire was first discovered in the roof, at which time there was no fire downstairs, and the testimony of the two neighbors who saw the engines of this train emitting large sparks, are facts sufficient to authorize the court in submitting the case to the jury. I. C. R. R. Co. v. Scheible, 162 Ky. 469, 172 S. W. 910; C. & O. R. R. Co. v. Meek, 169 Ky. 775, 185 S. W. 160; L. & N. R. R. Co. v. Brewer, 170 Ky. 505, 186 S. W. 166.

In C. N. O. & T. P. Ry. Co. v. Sadieville Milling Co., 137 Ky. 568, 126 S. W. 118, relied upon by appellant, we reversed the judgment with instructions to award a peremptory instruction, but there it will be found that no one saw any of appellant's trains pass on the night of the fire, nor did any one testify to sparks coming from them. Evidence on these points is found in the present record.

As in many similar cases it is argued on behalf of appellants that evidence showing the spark arresters on the two engines pulling train No. 26, were in perfect order and properly adjusted, according to inspections made before and after the fire, is conclusive the fire could not have originated from sparks from the engine. This made an issue for the jury, and the court did not err in so submitting it. See Southern Ry. Co. v. Hanna, 21 R. 850, 53 S. W. 1; C. & O. Ry. Co. v. Preston, 143 Ky. 189, 136 S. W. 203; L. & N. R. R. Co. v. Guttman, 148 Ky. 235, 146 S. W. 737; I. C. R. R. Co. v. Scheible, supra; L. & N. R. R. Co. v. McArthur, 163 Ky. 291, 173 S. W. 770.

It is next urged the court erred in the admission of testimony showing that on other occasions, both before and after the fire, engines other than those attached to train No. 26 had emitted sparks and cinders in the neighborhood of the Morgan house, as likewise evidence of other fires. The state of the record is such that it is impossible for us to know just what was the court's

ruling on this matter. Counsel do not agree in their interpretation of the order entered by the court. Be this as it may, if this evidence was before the jury it was not prejudicial in the present instance, as it is conceded by the parties that if the house was fired by a spark from any engines it was from those drawing train No. 26.

The instructions are complained of, but upon an examination of these we find nothing prejudicial therein.

It is said the damages are excessive. Decedent was seventeen years of age, in good health and was earning $2.00 a day, and according to the life tables had an expectancy of 35.37 years, nor can we say his daily earnings would never have exceeded the sum he was making at the time of his death. The verdict was not excessive.

Finding no error in the judgment appealed from same is accordingly affirmed.