C. B. STEWART, Appellant,

v.

Robert Lee SIZEMORE et al., Appellees.

Court of Appeals of Kentucky.

Nov. 1, 1957.

Glenn W. Denham, Elizabeth Gillis, Middlesboro, Smith, Denham & Gillis, for appellant.

A. E. Cornett, Hyden, for appellees.

STEWART, Judge.

This is a motion for an appeal from a judgment awarding Robert Lee Sizemore and Eileen Sizemore damages against C. B. Stewart in the sum of $2,000 for the destruction of their dwelling house. The complaint alleged in substance that Stewart's employee, Sim Crawford, negligently drove a truck which was on fire so close to the structure as to cause it to catch fire and burn down.

In urging a reversal it is contended: (1) A directed verdict should have been given, because there is no evidence in the record from which it can be presumed the house became ignited from the truck; (2) "Instruction I (B)" submitted by the lower court was prejudicially erroneous; (3) the evidence introduced, over Stewart's objection, as to the value of the house was incompetent; and (4) the award of $2,000 as damages is excessive. We shall consider these grounds in the order named.

A summary of appellees' testimony was to the effect that around December 15, 1955, between 4:00 and 5:00 p. m., the dwelling house located in Leslie County on the north side of Highway 421, the Hyden-Manchester highway, was seen being consumed by flames. None of appellees' witnesses was at the building when the fire started. They were stationed about 150 yards away and their attention was attracted to the conflagration by one or more loud explosive sounds. The structure at this time was undergoing repairs or recon-struction, but just what was being done to it is not made clear. We shall come back to this point later on when we discuss another aspect of the case. Most of the Sizemore witnesses stated they saw appellant's truck, with a load of coal on it, parked off the road on the same side as the house about 20 to 25 feet from it. According to them, the truck and the house were both in flames when they arrived at the scene.

Appellant's chief witnesses were Sim Crawford and Reed Reynolds. The former was driving appellant's truck on this occasion and the latter was trailing him under the wheel of another truck. Their versions of the fire are very similar. Crawford was proceeding over Highway 421 toward Manchester with an 18-ton load of coal. Reynolds stated he first noticed the truck was on fire when it was on the top of a hill about a mile from the house that burned, but, as the truck was on fire toward the rear, Crawford was unaware of this fact. Reynolds was following a short distance behind Crawford and, upon discovering the fire, he started signalling Crawford to call his attention to it. Crawford, however, did not notice the burning truck until he had gone down the hill and was four hundred yards or more above the house.

Crawford testified he finally brought the truck to a stop in the first wide place he could find in the highway, which was 40 or 50 feet above the Sizemore house and on the same side of it. He attempted to extinguish the fire but was unable to do so. He explained that, since the fire was burning near a gas tank and he was afraid of an explosion, he went back up the highway two or three hundred yards and began halting traffic. Reynolds traveled a similar distance below the house and also started flagging down all approaching motor vehicles. After about five minutes had elapsed two gas tanks on the truck exploded and two tires on it blew up, and Crawford and Reynolds then returned to the truck. In another 30 minutes the burning vehicle cooled down to the extent that traffic could

safely pass it. Shortly thereafter Crawford caught a ride into Manchester to report the mishap to his employer and Reynolds also departed.

Both Crawford and Reynolds emphasized that it was between 12:30 and 1:00 p. m. when the truck was stopped at the time it was on fire. They testified that while they were present at the burning truck, from the beginning of the incident up to the moment they left, the house did not catch fire. Two hours later Crawford returned to the truck and the house was still standing intact. Reynolds said he made two trips by the house after dark, one about 5:30 or 6:00 p. m. and another around 6:30 or 7:00 p. m., and that the house had not yet burned on either occasion. Both of these witnesses indicated it was not until the next day that they observed the structure had been destroyed.

Appellant maintains that an analysis of all the evidence introduced conclusively shows there was no causal connection between the fire on the truck and the fire that burned down the house. This assumption, he asserts, is based upon the fact that no witness testified the house caught on fire from the truck. Furthermore, he takes the position that eyewitnesses positively placed the burning truck at the scene of the building as early as 12:30 or 1:00 p. m., and that as late as 7:00 p. m. that night the house had not ignited. It will be recalled appellees' witnesses stated the house and truck were burning simultaneously between 4:00 and 5:00 p. m., and one of the chief inferences they claim is deducible from their testimony is that the exploding gas tanks set the building on fire.

We have written a number of times that evidence circumstantial in nature which tends to show that a fire was caused by the negligent act of another is sufficient to take the case to the jury and to uphold a verdict rendered by them. Louisville & N. R. Co. v. Hobbs, 188 Ky. 291, 221 S.W. 539; Louisville & N. R. Co. v. Brewer, 170 Ky.

505, 186 S.W. 166. Unquestionably, one side or the other in this instance was grossly mistaken as to the hour the dwelling and the truck were supposed to have burned. Be that as it may, it is not within the province of this Court to usurp the prerogative of a jury and decide as a matter of law which set of witnesses is worthy of belief. A definite issue was developed on the point in question, which was supported by substantial competent evidence on behalf of each of the parties, and neither the trial court nor this one may exercise independent judgment in evaluating this particular testimony. We conclude appellant was not entitled to a peremptory instruction.

The next ground relied upon for reversal must be upheld. "Instruction No. I (B)" in part told the jury it was the duty of appellant's employee to use ordinary care in preventing the fire's spreading from the truck to *dry leaves, grass, brush* or *other combustible materials* and thence to appellees' building, and if the fire did spread from appellant's truck to such combustible materials, it was the duty of the employee in charge of the truck to use such reasonable means at his command to arrest or extinguish the fire.

George Sizemore, the father of appellee, Robert Lee Sizemore, testified there was some sheetrock and dry lumber stacked between the truck and the house and that these materials were burning when he reached the site of the fire. Ed Gibson, another of appellees' witnesses, stated that lumber, he could not say how much, between the truck and the highway was on fire when he arrived at the conflagration. He estimated this particular stack was 10 to 12 feet from the edge of the blacktop on the highway. John L. Sizemore, a brother of appellee, said "some lumber" between the truck and the house was in flames. Appellant testified he inspected the area the day after the truck and building had burned and he said some sheetrock between the truck and the house was scorched around the edges, but, otherwise, no other traces

of fire existed between the house and the truck.

When the trial court told the jury it was appellant's responsibility to employ reasonable precaution to prevent "the fire's spreading from the truck to *dry leaves, grass, brush, or other combustible materials*" and thence to appellees' building it assumed certain facts that had no basis in proof in this case. It will be recalled no witness mentioned any materials between the truck and the house other than lumber and perhaps some sheetrock (which will not burn) were being consumed at the time. This instruction wrongfully presupposed that the fire could and possibly did ignite other inflammable objects when the evidence indicates that such did not occur. We have condemned many times an instruction which assumes the existence of a fact or set of facts which were not established by evidence. See Stanley's Instructions to Juries, Vol. 1, 1956 Ed., Section 25, p. 49.

■ It is next contended a false standard of measurement was allowed by the lower court in fixing the amount of damages resulting from the destruction of the house. We agree. Over appellant's objection, appellees' witnesses who undertook to furnish proof on this point were asked to state what the fair market value of the house was. Their answers in substance were it "was worth" from $2,000 to $2,500 or "it would cost" such sums of money to replace it.

■ The measure of damages where property is entirely consumed by fire, as was the case here, is the fair and reasonable value of the property when and where destroyed. We have heretofore written at length on the elements to be taken into account when the fair and reasonable value of a building destroyed by fire or other like casualty is a subject of estimation. It would serve no good purpose to extend this opinion by repeating those elements here. Instead, we shall simply refer the parties to the case of Prestonsburg Superior Oil Gas Co. v. Vance, 215 Ky. 77, 284 S.W. 405, 47 A.L.R. 483, wherein the pertinent elements to be established in respect to the damages under discussion are set forth in detail. The lower court will be governed by the Vance case in hearing proof on the damage question if a new trial is had.

The testimony of appellees' witnesses does not present a coherent picture as to the status of the building. Robert Lee Sizemore testified that about a week before the house went up in flames a car ran into it, breaking "three or four planks" in the foundation, and that he was paid $100 for the cost of fixing the foundation. Wayne Walker, an employee of George Sizemore, testified that, as a result of the car accident which damaged the foundation, the building had to be completely torn down before it could be restored to its previous state, and that no roof had been put on the building when it burned. This character of evidence, we are bound to admit, tends to make us somewhat skeptical of the statements of appellees' witnesses which placed a rather high value on the destroyed structure. However, as there must be another trial of this action, we shall reserve all consideration of the question raised as to the excessiveness of the damages.

Wherefore, the motion for appeal is sustained and the judgment is reversed with directions that it be set aside and that the case be remanded for a new trial in conformity with this opinion.